# CHARLESTON.

## BROWN SHOE CO. v. HARDIN.

Submitted February 8, 1916.    Decided February 15, 1916.

1. CARRIERS—*Local Carriers—Duties—"Common Carrier."*

   A local carrier, such as a cabman, wagoner or transfer man, carrying passengers and baggage for the public generally, from place to place in and about a city, or from town to town, is a common

carrier, and, in his relations with his patrons, he is governed by the legal principles applicable to carriers doing business on a larger scale.   (p. 613).

2.   SAME—*Performance of Contract—Subsequent Duties—Care of Property.*

On the performance of his contract of carriage in any case, his high obligation as carrier, making him practically an insurer of the property entrusted to him, ceases; but if, for any reason, the owner thereof does not receive it at the place of destination, the carrier is under the milder duty of exercising ordinary care for its safety, until it is called for, redelivered or disposed of in some legal way. He can neither abandon it nor leave it exposed to known danger of loss, destruction or injury.   (p. 614).

3.   SAME—*Duties of Trainmen—Liability as Warehousemen.*

A transfer man's duty as carrier ends with delivery of the goods entrusted to him, at the place of destination.   If, for any reason, he is not there relieved of their actual custody or possession, within a reasonable time, he is under a different, further and less exacting duty to provide for their safety, for another reasonable period of time, the degree of which duty is determined by the principles of law applicable to warehousemen.   (p. 616).

Error to Circuit Court, Kanawha County.

Action by the Brown Shoe Company against Silas Hardin, doing business, etc.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Morgan Owen* and *E. B. Dyer,* for plaintiff in error.

*Burdett & White,* for defendant in error.

POFFENBARGER, JUDGE:

The judgment for plaintiff, here complained of, is based upon a finding by the trial court acting in lieu of a jury, by consent of the parties, upon a statement of facts agreed to.

The right of the controversy depends largely upon the law of bailment.   The action was brought to recover the value of two traveling trays or telescopes and their contents, which were lost after having been placed in the care and custody of the defendant's agent, by an agent of the plaintiff, for carriage, as baggage, from some point in the City of Charleston to the station of the Chesapeake and Ohio Railway Co. in that city.   The defendant, doing business as City Taxi Cab

Co., was there engaged, in the transportation of passengers and baggage, for hire, to and from points in and about the city and to and from the railway stations therein, under a license for the purpose, issued to him by the city authorities. On a day in April, 1914, the plaintiff's agent, a traveling salesman, being in the city and intending to leave for the east on that day, by train No. 8 of said railway company, delivered to an agent of the defendant a large trunk containing samples of shoes and the two trays or telescopes, for transportation to the C. &. O. Railway station.

A claim check was given for each of the three pieces, reciting that the Taxi Cab Co. was ''C. & O. and K. & M. Railway Bonded Transfer Co., with privilege to check baggage from house or hotel to destination.'' The baggage was carried to the station and each of the three pieces placed on the platform thereof, before the arrival of train No. 8, and was ready for delivery to the plaintiff when that train arrived. At some time of the afternoon of that day and before the arrival of train No. 8, Burdett, the plaintiff's agent, altered his plans and decided to go west instead of east, and was not at the station to take the train mentioned. Nor did he advise the defendant of this fact, or give him any direction as to the disposition or custody of the baggage. He relied upon the defendant to hold it until called for by him and to deliver it to him upon the surrender of the claim checks held by him. Nor did the defendant or his agent remove the baggage from the station platform. It is known to have remained there until 8 o'clock in the evening, when the defendant's agent who had taken charge of it at the railway station, directed the attention of defendant's night man to the parcels, which then still had the checks attached to them. The next morning, Burdett appeared and called for his baggage; and, on the surrender of the check therefor, the trunk was delivered to him by the defendant's agent and he was informed that the other two pieces had been lost. The platform of the station, on which the property was deposited, was open and unenclosed. What became of the two lost pieces is not disclosed by the statement of facts.

In the transportation of the baggage from the point at which it was received, to its destination, the defendant acted

as a common carrier and his obligation was practically one of insurance. "It is generally held that truckmen, wagoners, cartmen, and others who undertake to carry goods for hire for the public generally and as a common employment in a city, or from one town or place, to another, are common carriers." 4 R. C. L., Title Carriers, sec. 24, p. 557. As to this legal proposition, there is no controversy. The divergence of views of counsel relates to the status of the defendant after he had delivered the baggage on the platform at the railway station. Relying upon *Benoleil* v. *Durocher*, 13 Rapport's Jud. Off. De Quebec, 260, the defendant urges that all duty on his part ceased on such delivery. The case relied upon is the only precedent upon a question of this kind, that diligent research on the part of counsel has disclosed. No written opinion is reported, but the reasons for the court's conclusion are set forth at some length in the judgment entered and indicated in the syllabus, reading as follows: "Where a local carrier or carter undertakes to transport luggage from one point to another within a city, *e. g.*, from one railway station to another, his responsibility is at an end when he has fulfilled the contract by delivering the luggage at the said station. If it is subsequently lost in consequence of the owner not being at the appointed place to receive it, he has no recourse against the carrier." On the other hand, it is insisted that, though the high duty imposed upon carriers by law in the fulfillment of the contract of carriage may have ended with the delivery on the platform, all responsibility for the safety of the property did not then cease and that the defendant was still bound to exercise some degree of care for its protection. In other words, the contention is that he was still liable for its loss or destruction, if occasioned by his negligence.

There was no written contract between the parties. The claim checks did not constitute contracts. They were in the nature of receipts and constituted evidence of delivery of the articles to which duplicates thereof were attached and of the ownership and identity of the parcels. There was an express oral contract to carry the baggage from the point of delivery to the place of destination, but it did not in terms define the rights and liabilities of the parties thereto. For these, it is necessary to resort to the law founded upon usage

and custom, which well and clearly defines them in all other instances of common carriage. No reason is preceived why the ·general principles of that law do not govern the class of common carriers to which ·the defendant belongs. After the completion of the contract of carriage, the strict rule of liability applicable throughout the performance thereof, is relaxed and modified. If the consignee of goods does not, within a reasonable time, call for them and take them into his own possession the carrier's responsibility for their safety is the same as that of a warehouseman. *Hurley & Son* v. *Railway Co.,* 68 W. Va. 471; *Hutchinson* v. *Express Co.,* 63 W. Va. 128; *Berry* v. *Railway Co.,* 44 W. Va. 538. His responsibility does not wholly end or terminate with the performance of his contract of carriage. He still remains under duty to exercise some degree of care for the safety of the property. The same principle governs in the ascertainment of the rights of the parties respecting baggage: ''If a passenger does not call for his baggage on arrival, the company cannot leave it uncared for, or abandon it. Its strict responsibility as a carrier will cease after a reasonable time has elapsed, to enable the owner to claim it, and a modified liability like that of warehousemen will supervene. The neglect of the owner to call for the baggage within a reasonable time, changes the character of the liability, but does not terminate it.'' *Matteson* v. *Railroad Co.,* 76 N. Y. 381; *Burnell* v. *Railroad Co.,* 45 N. Y. 184; *Fairfax* v. *Railroad Co.,* 67 N. Y. 11; Schouler's Bail. and Carriers, 3 ed., Sec. 694; Hutchinson, Carriers, 1291. In such cases, there is a duty to make some provision for the safety of the property which usually consists of storage, although railroad companies and other common carriers are not engaged in the business of storage. The law recognizes the necessity of limited storage or custody for mere safety, as a necessary incident of the business of carriage. It cannot justly close its eyes to the numerous minor casualties, mishaps and misadventures which may prevent appearance and demand at the place of destination. Moreover, it assumes that the parties impliedly contemplated some provision for their consequences, as part of the contract. Ordinarily, the owner is punctual in his appearance, production of his check and claim of his property, and it does not occur to either party, to make express

provision for what is not likely to but may occur, but the law does not assume their ignorance of such possibilities nor their intention to make no provision for them. On the contrary knowledge thereof and also the intention to make some provision for the safety of the property in such an event, are assumed. Nor does even negligent failure to make a prompt appearance and claim justify abandonment. The carrier's remedy for such delays, whether due to accident or negligence, is a reasonable charge for storage. Here, as in very many other cases, the law, conforming itself to rules of conduct governing the dealings and relations of prudent and fair men, makes allowance for inadvertance, mistakes and even wilful failures to comply with strict duty, and proportions the penalty to the offense, in the absence of an agreement inflicting a definite forfeiture of right.

Though the defendant's business was more limited than that of a railroad company or other carrier over long distances, the same general principle must be applicable to him. On the failure of the owner of baggage to call for it at its destination, his abandonment of it would have been equally as unreasonable and unjustifiable as that of any other carrier. He was bound to take such reasonable precaution for its safety as was practicable and not unduly burdensome. Though not engaged in the storage business and having no place especially provided for such business, common knowledge would suggest the practicability, without any great harship, of his custody of the comparitively small articles entrusted to him, for a limited time. For aught that appears in the statement of facts, he could have deposited them in the baggage-room of the railway station. It does not appear that he even made a request for such privilege. He could have taken them to his office, garage or place of business and stored them over night. In his business, such situations are likely not of frequent occurrence, wherefore the discharge of the duty here declared would not require maintenance of a station or building especially designed for storage.

A warehouseman is a bailee for compensation or hire, bound to exercise ordinary care for the safety of the property entrusted to him, *Heatherington* v. *Richter,* 31 W. Va. 858, not a mere gratuitous one, liable only for loss or injury by wilful

misconduct or gross negligence.   Occasional storage or custody of goods, in consequence of failure of the owner to remove them promptly, is a necessary incident of the business for which the carrier receives compensation and is within his contract, notwithstanding additional compensation may be charged for the incidental extra service.   The decisions in *Hurley & Son v. Railway Co.,* 68 W. Va. 471, *Berry v. Railway Co.,* 44 W. Va. 538 and *Hutchinson v. Express Co.,* 63 W. Va. 128, proceed upon this principle.   Consistently applied here, it required such care on the part of the defendant for the safety of the property in question as a prudent man bestows upon his own property, and such a man does not leave apparently valuable and easily portable articles in an exposed and unguarded place at night.

The judgment is clearly right and will be affirmed.

*Affirmed.*