# CHARLESTON.

A. F. THOMPSON MFG. CO. v. CHESAPEAKE & OHIO RY. CO.

Submitted January 24, 1923.   Decided January 30, 1923.

1. CARRIERS—*If Without Fault, Not Insurer of Goods Against Loss by Natural Infirmity or Inherent Vice.*

   A common carrier of goods, if itself not at fault, is not an insurer against loss or damage, caused by a natural infirmity or vice inherent in the goods carried.   (p. 7.)

2. SAME—*Transporting Stoves Entitled to Defend Damage Action by Showing Natural Cause and Lack of its Negligence.*

   So, a railway company, transporting a shipment of stoves, is entitled to defend an action for damage caused by the corrosion or rusting of the stoves in transit, upon the ground that the corrosion is the result of a chemical union of acetic acid in the asbestos fire fronts and the metal surrounding it, and that there was no negligence on the part of the carrier causing such corrosion.   (p. 7.)

3. SAME—*Notice of Claim Need be Filed with Delivering Carrier as Condition Precedent to Recovery in Interstate Shipment.*

   A shipper is not barred from maintaining an action against a carrier for negligently causing the rusting, during transit, of a shipment of stoves, because it did not file its claim with the receiving or delivering carrier within six months, as provided by the bill of lading, the Federal Interstate Commerce Act (Barnes' Federal Code, sec. 7976) providing that "no notice of claim shall be required as a condition precedent to recovery", in such cases.   (p. 9.)

4. APPEAL AND ERROR—*Improper Admission of Letter Where Author Subsequently Testifies to Contents Not Prejudicial.*

   Where a letter, containing statements material to the issues of fact involved, is improperly admitted in evidence, such erroneous admission does not constitute reversible error, if the author of the letter, or person responsible for the statements in it, later testifies in person in the case, and to the same effect, and submits himself to cross-examination on the matters in question.   (p. 10.)

5. TRIAL—*Instructions Introducing Questions of Basic Importance Not Founded on Evidence, Improper.*

   Instructions which introduce into the case questions of basic

importance, not founded on the evidence submitted, are improper, and, if given, constitute reversible error. Thus, in an action against a carrier to recover for the damaging of goods during transit, instructions as to the carrier's liability for losses occasioned by unreasonable delay are improper, if unsupported by evidence that such delay in fact occurred. (p. 11).

Error to Circuit Court, Cabell County.

Action by the A. F. Thompson Manufacturing Company against the Chesapeake & Ohio Railway Company. From judgment for plaintiff, defendant brings error.

*Reversed and remanded.*

*Fitzpatrick, Brown & Davis* and *C. W. Strickling,* for plaintiff in error.

*Simms & Staker,* for defendant in error.

MEREDITH, JUDGE:

The A. F. Thompson Manufacturing Company recovered a judgment of $3,519.12 for the damaging of a large part of a shipment of stoves delivered to the defendant company for carriage. Defendant seeks a reversal of that judgment.

Plaintiff is a manufacturer of sheet metal stoves in the city of Huntington. Defendant is a railway engaged in both inter-state and intra-state commerce. On June 9, 1920, plaintiff delivered to defendant for shipment, and packed in two cars furnished for the purpose 1700 small gas heaters, receiving two bills of lading therefor. The stoves, about 800 in one car, and 900 in the other, were consigned to the Richards & Conover Hardware Company, Kansas City, Missouri. From 20 to 30 per cent of them were packed in corrugated pasteboard cartons, sealed with gum tape; the remainder in small wooden crates. Under the terms of the sale, the stoves were purchased f. o. b. Kansas City.

On June 26, the cars reached Kansas City and were examined, though not opened, by the car inspector, who found them in first class condition. They were, according to evidence, placed on the unloading siding at different times,

one car being so placed on July 1, the other on the evening of the 3rd or morning of the 4th. Employees of the consignee unloaded the cars on July 4th, which was Sunday, and while so engaged, discovered the damage complained of. It appears that a majority of the stoves, when unloaded, especially those not packed in the cartons, were badly rusted or corroded. The nickeled corners and trimmings were in many instances very badly rusted, and there were large spots of rust on the polished sheet iron. So damaged was their condition, that although the purchaser was very much in need of the stoves, it was compelled to reject 778 of them as unsalable, and so notified the plaintiff, the seller, to whom they were later returned.

In the declaration, plaintiff's claim for recovery is founded, first, upon defendant's general duty as a common carrier to transport the stoves without injury to them, and its negligent failure to do so; and, second, upon defendant's negligent and improper conduct in taking an unusual and unreasonable time for the carrying and delivering of the shipment.

The controversies of fact in this case are somewhat unusual, and upon them are based the conflicting theories of the parties. First of all, counsel for plantiff urge that defendant being a common carrier, it is therefore an insurer absolutely, except as to acts of God and the public enemy and that consequently, under no view of the facts, could the verdict have been otherwise than for the plaintiff. Counsel for the defendant, on the other hand, while not undertaking to excuse it of the responsibilities of a common carrier, insist with equal vigor, that under the principles applicable to the facts here no liability attaches to the carrier in this case. They say, in short, that the facts show beyond doubt that the rusting of the stoves was brought about, not by any act or default on the part of the defendant or its agents, but by natural agencies, the result of a vice or defect inherent in the stoves themselves, and of which defendant had no knowledge or control.

Plaintiff denies the propriety of the defense offered. While

admitting the application of defendant's reasoning to some classes of cases, counsel argue that the courts have never extended, and should never extend, the doctrine so as to include such inanimate objects as heating stoves. As this cause is to be remanded, it is incumbent upon us to determine this issue.

The evidence submitted includes, in addition to general statements as to the rusty condition of the stoves on arrival in Kansas City, the testimony of several chemists, introduced by both parties. Summarized, the evidence for the plaintiff is that a chemical analysis of the rust taken from the stoves showed traces of hydrochloric acid and the absolute absence of acetates. Having qualified as an expert witness, and having testified as to the presence of hydrochloric acid in the rust, D. M. Strickland, plaintiff's chief technical witness was asked hypothetically whether the rusting might have resulted from the car loads of stoves being placed while in transit, in juxtaposition to some chemical plant from which the hydrochloric fumes could have entered the cars. The answer was that such might easily have been the case. This reinforced by other like evidence, represents plaintiff's theory of the rusting of the stoves, and for which, of course, the defendant would be liable.

Defendant, on the other hand, offers evidence of a very similar character to the effect that the tests showed no hydrochloric acid in the rust, but did indicate positively the presence of acetates. Defendant's chemist also testified that he tested samples of the asbestos with which the fire fronts of the stoves were lined, and found acetates present in large quantities, accounting therefor by explaining that acetic acid is generally used in the refining of asbestos. It being also shown that the inside walls of the stoves, near the asbestos, were more heavily corroded than other parts of the metal, the defendant moulded from the circumstances its theory that the corrosion of the stoves was due not to their exposure to any outside agency, but to the chemical union of the acetic acid in the asbestos and the iron or ferrous parts of the stoves; i. e. to an inherent vice in the goods.

Plaintiff's witness, A. F. Thompson, qualified as one informed as to the methods of refining asbestos and denied that acetic acid was used in the manufacture of commercial asbestos.

With the true solution of the facts we are not concerned, we need only determine whether defendant's theory of defense is an allowable one. As stated above, plaintiff's counsel admit that there is such a circumstance, known to the law of carriers, as the inherent vice of goods. They wish, however, to limit the excusing of carriers from liability because of such inherent defects to two classes of goods, and claim the authority of the decisions in so doing. These two classes are, first, live stock; and, second, perishable food stuffs.

Whether we limit the doctrine in the strict manner contended for by plaintiff, or give it the more liberal application urged by defendant, we are not unmindful either of the strict accountability which sound policy exacts from common carriers of goods, or of the spirit of the exceptions which are engrafted on that principle. We agree with counsel for plaintiff that there seems to be no decision expressly extending the idea of inherent vice to such inanimate articles as iron stoves. We can not agree, however, that the language of JUDGE RITZ in *Talbott* v. *Payne,* 90 W. Va. 280, 111 S. E. 228, precludes the propriety of such an extension. The reasoning of the court in excepting the carrier from absolute liability in the transportation of live animals in that case might with almost equal persuasiveness apply to the present circumstances. By no packing or securing of packages or careful handling, however painstaking, could the defendant have forestalled or checked the corrosion of these stoves, if caused by the presence of acetic acid in the asbestos, as it contends. At an expenditure of $150, plaintiff had all of the rusted stoves cleaned and greased with paraffine oil, and was but partially successful in remedying their condition.

Though the decisions cited on the subject are generally those applying the exception to live stock, fruits and vegetables, we have no where found an epression of the doctrine which would seem upon reason to limit the principle to those

cases alone.    Illustrative of both the spirit of the rule and
the character of the decisions are the expressions found in
various texts:

"Carriers are not insurers that goods shall reach their des-
tination in the same condition in which they were shipped;
and they are not liable for ordinary wear and tear of goods
in the course of transportation, or for their ordinary loss,
deterioration in quantity or quality in the course of the trip,
or from inherent natural infirmity and tendency to damage.
The owner of goods sent by a carrier is not insured by the
carrier against their explosion, spontaneous combustion, putre-
faction, dissolution, growth, disease, fermentation, acidifica-
tion, effervescence, evaporation, unavoidable    leakage,    or
natural decay.   A carrier of perishable goods is liable for
damages for its failure to exercise due care in view of the
nature of the goods, and must show that the loss was caused
by the inherent qualities of the goods unmixed with negli-
gence on its part."  1   Michie, Carriers, Sec. 1003, cases
cited; To like effect, see Story, Bailments, (9th ed.) Sec.
942a; 4 Elliott, Railroads, (3rd ed.) Sec. 2230; 5 Thompson,
Negligence, Sec. 6471.

.A further persuasive authority in this connection is the case
of *Lister* v. *Railway Company*, 1 K. B. (1903) 878, 72 L. J.
K. B. 385, 88 L. T. 561; cited in Hutchinson, Carriers, (3rd.
ed.) Sec. 334.   There the plaintiff employed defendant, a
common carrier, to haul an engine on "its own wheels to a
near-by station.    Due to a defect, not discernible in an or-
dinary examination, a shaft broke, defendant's horses be-
came frightened, and the engine was upset and damaged.
The trial court, being of opinion that since the shaft would
not have broken except for the strain applied to it by defend-
ant, held for the plaintiff.    On appeal, Lord Alverstone dis-
tinguished the case from those in which the defendant might
have selected alternative modes of carriage, and in the course
of his opinion used the following language:

"The county court judge, in thinking that the rule as to
the non-liability of a common carrier for damage caused by
an inherent defect in the thing carried, was limited to

cases in which the damage would equally have occurred if the thing had not been carried at all, in my opinion went too far.'' And in a note of concurrence, Channel, J. ''thinks the proposition may be stated thus: The inherent unfitness for the carriage contemplated, although not known to either party, is inherent vice within the meaning of the exception that has been established by the decided cases.''

This, we think, was a clear judicial recognition of the applicability of the doctrine of inherent vice to articles other than animals and food-stuffs, and we are of opinion that the defendant here was entitled to make the defense attempted; remembering, as its counsel admit in their brief, and as the jury were instructed, that the burden of establishing such a defense rests upon the carrier. *Baltimore & Ohio R. R. Co.* v. *Morehead*, 5 W. Va. 293; *Chicago, R. I. & P. R. Co.* v. *Logan, Snow & Co.*, 23 Okla. 707, 105 Pac. 343, 29 L. R. A. (n. s.) 663.

· In addition to supporting the general theory of its defense, defendants counsel here rely particularly upon three assignments of error. First, They complain that the trial court should have set aside the verdict because no claim in writing was filed with the carrier within six months, as stipulated in the bill of lading. This provision of the bill of lading is as follows:

''Except where the loss, damage or injury complained of is due to delay or damage while being loaded and unloaded, or damage in transit by carelessness or negligence, as conditions precedent to recovery, claims must be made in writing to the originating or delivering carrier within six months after delivery of the property (or in case of export traffic within nine months after delivery at port of export), or in case of a failure to make delivery within six months (or nine months in case of export traffic) after a reasonable time for delivery has elapsed.''

In support of their contention, counsel cite and rely upon *Kahn* v. *Amer. Ry. Express Co.*, 88 W. Va. 17, 106 S. E. 126. We think this argument unsupported either by the case cited or the terms of the bill of lading. Those pro-

visions were drafted apparently to conform to the requirements of the Bills of Lading Act, Sec. 7976, Barnes' Federal Code. Strict regard must be paid to the final proviso of that act:

"Provided, however, that if the loss, damage, or injury complained of was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery."

The many decisions prior to this enactment sustaining the carrier's right to require the filing of claims of loss within a reasonable period as a condition precedent to recovery are of little value here. Clearly, the plaintiff founds its right of recovery upon circumstances embraced within the expression of the proviso quoted: "or damaged in transit by carelessness or negligence." The bill of lading contains substantially the same provision. In the Kahn case, plaintiff sued to recover for the abstraction of part of a shipment of furs during transit, and the court held that his failure to file his claim was fatal. The distinction between the cases is apparent. As no notice of claim was necessary, we need not discuss certain portions of the evidence in regard to a claim filed with the Chicago R. I. & P. R. Co., the delivering carrier.

Second. Defendant complains of the admission in evidence of a letter offered by the plaintiff. This letter which was addressed to the plaintiff was written by an employe of the American Rolling Mills Co., and contained references to a claim filed with the Chicago R. I. & P. R. Co. in regard to the rusting of the stoves in question, and it was for the expressed purpose of proving the filing of this claim that plaintiff introduced it. In addition to the references to the claim, however, the letter contained other statements, to the effect that plaintiff's conclusion that the stoves had become rusted by the cars having been left standing near a chemical factory or having previously contained hydrochloric acid, was borne out by tests conducted by the company's research department. Defendant's objection to the admission of such

a letter is well taken. Though ostensibly offered for the one purpose, and it an unnecessary one, the letter contained very pertinent statements relative to other issues involved. In that the letter is clearly incompetent. We do not, however, think the erroneous admission constituted, in this case, reversible error. A chemist from the same research department later testified in person and to the same effect. The letter could have carried no additional weight. The error not being prejudicial, it alone would not be ground for reversal. Vol. 1, Cum. Sup. Michie's Digest, Va. & W. Va. Rep. page 320. Proof of the filing of the claim being unnecessary, this letter will clearly be incompetent on a second trial of this cause.

Third. As a third ground for reversal, defendant assigns the giving by the court of plaintiff's instructions Nos. 1 and 3. Instruction No. 3 is as follows:

"The Court instructs the jury that if they believe from the evidence in this case that the stoves which were damaged were not transported in the usual or average time taken for transportation from Huntington, West Virginia, to Kansas City, Missouri, and that such delay was unreasonable and that the damage to said stoves would not have occurred had the stoves been shipped in the usual or reasonable time ordinarily taken they should find for the plaintiff in the amount of said damages."

Note the final clause of this instruction. By it the jury's consideration was directed to the element of unreasonable delay. This is an issue of the highest importance. If there was unreasonable delay in the handling of the stoves, negligence would necessarily be imputed to the carrier. The facts, as they appear from the record, are that about 23 days elapsed from the time the stoves were loaded in the cars until they were switched to the unloading track in Kansas City. Whether this was an unreasonable period we have no means of knowing. Whether, if it was an unreasonable length of time, the delay was in any way responsible for the rusting of the stoves, we are entirely uninformed. Absolutely nothing appears in the record to enlighten either court

or jury on these particulars. This being so, any instruction introducing the matter of delay as a basis of recovery is entirely without foundation of fact to support it and is clearly prejudicial and reversible error. "The giving of instructions having no basis or foundation in the evidence, in a case in which the jury might have found an unimpeachable verdict for either party, upon a basic issue made, is reversible." *Schwartz* v. *Clark*, 86 W. Va. 244, 103 S. E. 47. Accord: *Welch* v. *King*, 82 W. Va. 258, 95 S. E. 844; *Penix* v. *Grafton*, 86 W. Va. 278, 103 S. E. 106.

Defendant's instruction No. 1 was properly refused; its instruction No. 2 should not have been given.

So, we reverse the judgment, set aside the verdict, and remand the case for a new trial.

*Reversed and remanded.*