## Mayer v. Yellow Cab Company.

*Harry Kaufman* and *Sidney H. Mandel,* for plaintiff.
*S. Regen Ginsburg* and *M. R. Marston,* for defendant.

GLASS, J., March 7, 1931.—This is an action to recover for the loss of hand-baggage. The case was first tried *ex parte* by a brother judge without a jury, and a finding made by him for the plaintiff in the sum of $766. A new trial was subsequently granted and the case was later tried by a judge without a jury, and a finding made for the plaintiff in the sum of $743. The matter is now before us on a motion for a new trial and for judgment for the defendant *non obstante veredicto.* The questions raised by the defendant are as follows:

(1) Was there sufficient evidence to indicate the ownership of the vehicle in question; (2) was there any evidence of negligence on the part of the defendant; (3) was not the plaintiff guilty of contributory negligence; (4) was not the finding clearly excessive?

These questions we shall take up in their order. Considering the testimony in the light most favorable to the plaintiff, in accordance with the familiar rule that all the evidence and proper inferences therefrom favorable to the plaintiff must be taken as true, and all unfavorable to him rejected (Hunter *v.* Pope, 289 Pa. 560; Frank *v.* Reading Co., 297 Pa. 233), the trial judge could reasonably have found these facts: On July 22, 1929, at about 9 o'clock in the morning, the plaintiff, together with a friend, Max Kornfeld, who was later a witness for the plaintiff in the case, left a ferry boat at the foot of

Chestnut Street, in the City of Philadelphia, and came to the curb at the entrance to the Reading Railway ferries for the purpose of getting a taxicab. They were hailed by a starter of the defendant company who was stationed there, and one of the defendant's cabs came up and the chauffeur in charge thereof took the plaintiff's handbag and placed it in the compartment along-side of the seat in the front of the cab. The plaintiff then invited a Mr. Conn and his wife to go along with them. They all entered the cab and were driven to the Bankers Trust Building at Juniper and Walnut Streets, where Mr. and Mrs. Conn alighted, and the cab was then driven to the Philadelphia Record Building at Broad and Wood Streets, where the plaintiff and Mr. Kornfeld alighted. Upon leaving the cab, the plaintiff proceeded into the building and Mr. Kornfeld stopped to pay the fare. After paying it, the chauffeur handed him a white slip which had on it the name "Yellow Cab," and he followed the plaintiff to the building. As the plaintiff reached the elevator in said build-ing, he turned to Mr. Kornfeld and asked him if he had the bag, and, upon receiving an answer in the negative, they both returned to the street in search of the taxicab, but it had driven off and the handbag was not there. The plaintiff immediately reported the loss to the lost and found department of the defendant company, but the bag and its contents were never returned to him.

The plaintiff and his witness Kornfeld were both positive and testified with absolute certainty to the identity of the cab as a Yellow Cab of the defendant company. The plaintiff testified, further, that he used such Yellow Cabs two or three times a day. The baggage in question consisted of a handbag containing articles of men's wearing apparel and jewelry.

The defendant company endeavored by its testimony to show that there was no record of any such trip by any of its taxicabs from the Reading Railway Ferries to Broad and Wood Streets at or about the time in question, and that there was no such bag turned in to the lost and found department of the company on that day or the following day. There was no testimony offered by the defendant that the bag in question was either delivered to the plaintiff or to the other passenger in the cab at the time when they alighted therefrom, or that it was placed by the chauffeur on the curb alongside of the cab and its presence there called to the attention of the plaintiff or his companion.

A careful review of all the evidence leads us to the conclusion that there was sufficient evidence to indicate the ownership of the vehicle in question, and that the trial judge was justified in finding that the cab involved was a Yellow Cab, the property of the defendant company. The court saw the witnesses and observed their demeanor on the witness stand, and it was for him to attach such credence to their testimony as he thought it merited. We cannot substitute our judgment for that of the trial judge, who made a finding favorable to the plaintiff: White v. Sixteenth and Locust Street Realty Co., 80 Pa. Superior Ct. 49.

As to the negligence of the defendant: The defendant's theory of the case is that there was no negligence, because at the time of the loss in question the defendant carrier was not an insurer, but a mere warehouseman, and as such liable only for ordinary negligence, which must be proven in a regular way; that the journey being ended, the carrier became a warehouseman because the plaintiff did not look for his bag until after the lapse of a minute and a half; the inference being that it was more than a reasonable time for so doing. With that view we cannot agree. The facts of the case do not lend themselves to the application of such a theory. However, in that class of cases wherein it has been held that the relationship of warehouseman existed, recovery was

not permitted because it appeared therein that the baggage was left in the care and custody of the warehouseman for an unreasonable length of time.

In the case of Moyer v. Penna. R. R. Co., 31 Pa. Superior Ct. 559, the court says:

" 'After goods have been delivered by a common carrier at depot, the owner or consignee has a reasonable time within which to remove them, during which the liability of the carrier as an insurer continues, but after the expiration of such reasonable time, the liability of the carrier becomes modified, and it is only bound to exercise ordinary care to secure safety of the goods. The liability is that of a bailee for hire and grows out of the original contract.' "

And in Sheehan v. American Railway Express Co., 91 Pa. Superior Ct. 71, Keller, J., says:

"The liability of the carrier continues until the consignee of the freight, or the passenger, as the case may be, has had reasonable time to call for and take away his goods or baggage. But where the carrier is obligated to make delivery, its liability as carrier continues until it delivers the goods or offers to deliver them at the place of delivery and is unable to make delivery through no fault of its own. If unable to make delivery at the place specified in the contract its liability thereafter is that of a warehouseman and not a common carrier; just as the liability of a carrier for a freight shipment or a passenger's baggage, after the expiration of a reasonable time for the consignee or passenger to call and receive it, is that of a warehouseman."

And it has been held that the neglect of an owner to call for his baggage within a reasonable time changes the character of the liability, but does not terminate it: Matson v. Railroad Co., 76 N. Y. 381; Burnell v. Railroad Co., 45 N. Y. 184; Shoe Co. v. Hardin, 77 W. Va. 611.

Thus it is apparent, even under the defendant's theory of the case, that if the plaintiff sought the baggage within a reasonable time after he missed it, the relationship of the carrier as an insurer of the baggage still continued, and it was not necessary for the plaintiff to prove the negligence in the way indicated by the defendant. The testimony as to the reasonableness of the time within which the plaintiff looked for his missing baggage was uncontradicted. It, therefore, became a question of law for the court; and even if it had been contradicted and would have been a question of fact for the fact-finding judge, he could justifiably have found that a reasonable time had not elapsed, because the testimony indicated that the length of time consumed was the time it would take for one to walk from the curb to the entrance to an elevator in the front of a building and back again, so that, even, upon the defendant's own theory, the plaintiff was entitled to a recovery.

We find that the trial judge made a proper finding. The defendant is a common carrier; it operates taxicabs on the public streets.

"Taxicabs are now so generally in use that they are included in the class of common carriers. The name is a coined one to describe a conveyance similar to a hackney carriage, operated by electric or steam power, and held for public hire at designated places: . . ." Donnelly v. Phila. & Reading Ry. Co., 53 Pa. Superior Ct. 78, 82.

The chauffeur of the taxicab was the servant of the carrier: Donnelly v. Phila. & Reading Ry. Co., supra. The plaintiff was a passenger: Berkebile v. Johnstown Traction Co., 255 Pa. 310; and what was taken by the chauffeur from the plaintiff, to wit, the handbag with its contents, was baggage: Kaplan v. Director General of Railroads, 78 Pa. Superior Ct. 195, 199, citing Bullard v. D., L. & W. R. R. Co., 21 Pa. Superior Ct. 583, 586, in which the court said:

" 'Baggage,' is defined as 'such articles of necessary or personal convenience as are usually carried by passengers for their personal use.' "

And in Kast v. Phila. & Reading Ry. Co., 28 Pa. Superior Ct. 107, it is said that baggage must be such articles as are understood to be of "personal convenience" or necessity, and such as are usually carried by passengers for personal use.

From the time that the chauffeur or the servant of the defendant company took the handbag from the plaintiff and placed it in the taxicab and the plaintiff entered it, the defendant carrier became liable for the said baggage as insurer until the redelivery by it or its servant to the plaintiff. In 3 Hutchinson on Carriers (3rd ed.), § 1241, par. 678, it is said:

"It is now too well established to be controverted that in the carriage of the passenger's baggage the carrier incurs the full responsibility of the common carrier of goods and becomes an insurer of its safety against every accident which is not the act of God or of the public enemy or the fault of the passenger himself."

See McGill v. Rowand, 3 Pa. 451. In Bullard v. D., L. & W. R. R. Co., *supra* (page 586):

"The rule is well settled that the liability of a carrier for a passenger's baggage, which has been entrusted to its care, is that of an insurer: . . . Jacobs v. Central R. R. Co. of New Jersey, 19 Pa. Superior Ct. 13."

In the instant case the evidence indicates that there was a total default in delivery of or accounting for the baggage, although demand therefor was made by the plaintiff. There being no explanation with respect to the loss of the goods or the nondelivery thereof, the plaintiff established a *prima facie* case of negligence. In Verner v. Sweitzer, 32 Pa. 208, 214, the court said:

". . . and no proof or even allegation made of a reason for the non-delivery of the other, according to the doctrine fully recognised and affirmed in the cases last cited, they are subject to the imputation, that it is either yet in their possession, or has been embezzled by their agents or servants. The fact of non-delivery, under the circumstances proved in the case, is *prima facie* evidence, at least, of want of ordinary care. And such, is said per Savage, C. J., in Beardslee v. Richardson, 11 Wend. 25, would be the rule, even when the bailment is gratuitous on the part of the bailee, or for the sole advantage of the bailor." To the same effect was Fairfax v. N. Y. C. & Hudson River Ry. Co., 67 N. Y. 11; Hasbrouck v. N. Y. C. & H. R. Ry. Co., 202 N. Y. 363.

Attention is called to another principle of law which might be invoked here and which holds that for the high liability of insurer by a carrier to exist, it must appear that the passenger surrendered complete and exclusive possession, custody and control of the baggage to the carrier. In Burnett v. Riter, 276 S. W. 347, 349, the court says: "Carriers of passengers are common carriers with respect to the baggage of their passengers, and, under the general rule, the liability of a carrier for baggage entrusted to its care is the same as that of a carrier of goods—that of an insurer: 4 Elliott on Railroads (3rd ed.), § 2506; 3 Hutchinson on Carriers, par. 1240; Lusk v. Bloch, 66 Okla. 171, 168 P. 430, L. R. A. 1918 C., 109." In the instant case the baggage in question was under the exclusive possession and control of the carrier. It had been taken from the plaintiff by a servant of the defendant and kept by him and was under his control during the entire journey. It was necessary for him to have returned it to the plaintiff at the destination. This was not done, and the plaintiff was, therefore, entitled to recover. See Hasbrouck v. N. Y C. & H. R. Ry. Co., *supra.*

As to the plaintiff's contributory negligence, little need be said. There is nothing in the testimony which indicates any contributory negligence on the part of the plaintiff. He did what an ordinarily careful and prudent person under like circumstances would have done. The trial judge, sitting as a jury, found that there was no contributory negligence, for which there is ample justification.

As to the excessiveness of the finding: A careful review of the evidence discloses that the finding was predicated upon the credible testimony produced at the trial. The trial judge did not find for the plaintiff in the amount claimed in his statement of claim, but apparently allowed for the depreciation of some of the articles contained in the handbag. There was competent testimony as to their value. In Lloyd v. Haugh, 223 Pa. 148, 157, the court said:

". . . the just rule of damages is the actual value of the thing destroyed [in the instant case lost] to him who owns it, taking into account its cost, the practicability and expense of replacing it, and such other considerations as in the particular case affect its value to the owner:" Sedgwick on Damages, § 251.

After a careful consideration of the case, it appearing that the trial judge committed no errors in his rulings on evidence or in his findings, the motions for a new trial and for judgment for the defendant *non obstante veredicto* are accordingly dismissed.