298 S.E.2d 236

**Brady Lee ADKINS, Jr., et al.**

v.

**Claude SLATER, d/b/a Buster's Garage, et al.**

No. 15576.

Supreme Court of Appeals of West Virginia.

Dec. 1, 1982.

Gerard R. Stowers, Bowles, McDavid, Graff & Love, Charleston, for appellants.

Edward W. Rugeley, Jr. and Pamela Dawn Tarr, Jackson, Kelly, Holt & O'Farrell, Charleston, for appellees.

PER CURIAM:

Brady Lee Adkins, Jr. and his wife brought suit in the Kanawha County Circuit Court against a mobile home mover and a wrecker service for damages caused in an attempt to move a mobile home. The circuit court directed a verdict for the defendants, holding that the plaintiffs had failed to prove a *prima facie* case of negligence. The plaintiffs appeal. We conclude that the question of whether the appellees were acting as common carriers, and as such insurers of the safety of property transported, should have been submitted to the jury; further, there was sufficient evidence in the record to submit the question of negligence to the jury. Consequently, we reverse the judgment of the circuit court, and remand the case.

The appellants' evidence showed that they owned and resided in a seventy-foot mobile home that was parked on an embankment, and supported in the front by cinder blocks. In May of 1978 they decided to move the mobile home, and retained Benjamin Moles to perform the move. Appellants also hired Claude Slater, d/b/a Buster's Garage, to lift the home so that the cinder blocks might be removed, and to assist Mr. Moles in the move. The wrecker was needed to help Moles remove the home from the embankment; the actual transportation of the home to its new location would be done by Moles, using a truck specially designed for that purpose.

On the morning of May 31, 1978, Moles arrived with his truck and inspected the trailer. He told Mr. Adkins that the move might be a little tricky or rough, but that he would try to do it. Adkins replied that the move had to be completed that day. When the wrecker arrived, Moles told the driver where to attach the chains to the mobile home, then directed him in pulling it. The mobile home was sitting perpendicular to the street below, and was pulled down the embankment at an angle in a series of pulls. Partway down the hill, the middle tire on the downhill side blew out, and the mobile home began to tilt over. Adkins noticed that the supports or riggers had come apart from the steel frame and pushed through the siding of the mobile home, and the frame had pushed against the wheels and the axles, preventing them from turning.

The appellees then dug a trench on the uphill side of the mobile home and put cinder blocks and rocks on the downhill side to level it. Mr. Adkins testified that while the trench was being dug, the driver of the wrecker insisted that he sign a statement purportedly releasing Buster's Garage from all liability for damage to the mobile home or property from which it was moved.[1] The mobile home was then pulled down to the street and attached to Moles' truck. He attempted to pull it, but gave up after about one-tenth of a mile, saying that it was too badly damaged to move. Moles told Adkins that the wheels were crushed and would have to be replaced, and the frame brought away from the wheels so they could turn. Moles parked the mobile

---

1. The wrecker service, however, claimed that  the release was executed before the move began.

home on the street in front of the lot, and the appellees left.

The appellants hired a repairman, who attempted emergency repairs to the mobile home. Another towing company then tried to move the mobile home, at which time it completely collapsed, blocking several driveways and a street. The Putnam County Sheriff seized the mobile home, had it repaired and moved, and impounded it until repairs and storage costs could be paid. The appellants were unable to pay these costs, and the home was eventually sold.

Appellants filed this action, seeking a judgment of $50,000 against the appellees, jointly and severally, for damages caused by their negligent attempt to move the mobile home. Buster's Garage denied negligence and raised the defenses of release, assumption of risk, and contributory negligence. Moles denied negligence, blaming Buster's Garage and/or the appellants for the damages, and raised the defense of assumption of risk.

The appellants filed a motion *in limine* to prevent any reference to the alleged release, which was denied at trial. In addition, they filed a trial brief in which they asserted that the appellees were acting as common carriers throughout the move, and as such were insurers of the safety of the mobile home; that as common carriers they could not contract away their liability for negligence; and that the release was without consideration and procured by duress.

At trial, the appellants relied on the theory that the appellees should have taken measures to level the trailer during the move down the hill. A former owner of a wrecker service who had also assisted in moving mobile homes testified that they normally used a procedure known as "cribbing", which involves the use of blocks or ties under the front of the trailer to hold it up, and keep it from dropping. Appellants contended that the appellees were negligent in permitting the home to get up on an angle which, because of the sheer weight or structure of the home, caused the subsequent damage. They apparently based this theory upon the testimony of a mobile home dealer and repairman, who stated that once the frame of a mobile home has been bent or laid over on its side it loses its engineering design, and if the home is then moved, it "just kind of folds down over the wheels and axles. Then you end up getting your tires into the outrigger and into the floor and you blow tires and everything else."

At the close of the appellants' evidence, the appellees moved for a directed verdict in their favor, contending that appellants had failed to prove any negligence on their part. They argued that appellants should have presented an expert to testify that their actions did not meet a proper standard of care in the mobile home moving industry. The appellants maintained that they had in fact shown ordinary negligence, which was within the jury's ability to comprehend without expert testimony. Further, they contended that they need not show negligence, in that the appellees were acting as common carriers, and as such were strictly liable as insurers of the safety of the goods they transported.

The court concluded that appellants could not raise the common carrier standard of care at the "eleventh hour", since their complaint was based exclusively on negligence.[2] He denied the appellants' motion to amend their complaint to conform to the evidence, finding no proof that the appellees were common carriers. In his opinion, the case involved only an independent individual contract between the appellees and the appellants;[3] further, there had been no testimony about the higher standard of care required of carriers. The court found that the appellants had failed to prove a *prima facie* case of negligence against either or both of the appellees, and directed a verdict for the appellees.

---

**2.** The trial court considered their trial brief relevant only to the validity of the purported release, not to the standard of care.

**3.** Interestingly enough, both of the appellees had denied the existence of a contract between them and the appellants.

## I

The appellants do not contend that the appellees are common carriers within any statutory definition of the term.[4] Rather, they maintain that under common law principles the appellees were acting as common carriers, and as such were strictly liable for any damages caused by them to property they transport. "At common law a common carrier is one, who undertakes for hire to carry from place to place the goods of all persons indifferently." *Maslin v. B. & O. R.R. Co.*, 14 W.Va. 180, 188 (1878).[5] A common carrier need not be engaged in business on a large scale, but may be involved in a merely local operation, carrying goods from place to place within a city, or from town to town. *See Brown Shoe Co. v. Hardin*, 77 W.Va. 611, 87 S.E. 1014 (1916). Further, a common carrier need not agree to carry all kinds of property:

> "At common law a man might become a common carrier of just such kinds of property as he chose. He was a common carrier of such kinds of property as he publicly undertook as a business to convey for all persons indifferently for hire."

*Maslin, supra,* at 188. Thus, a taxicab owner who transports passengers and baggage for the public generally, is a common carrier with respect to the safety of baggage transported, *Brown Shoe Co., supra;* as is an express company with respect to property intrusted to it for shipment, *Hutchinson v. United States Express Co.,* 63 W.Va. 128, 59 S.E. 949 (1907); until the goods have reached their destination.

Because of the variety of situations that give rise to the question of whether a person is acting as a common carrier, there are no hard and fast rules that may be followed; each case must be decided on its own facts. "What constitutes a common carrier is a question of law, but whether a party in a particular instance comes within the class is a question of fact, to be determined as the case may arise." *State v. Vaughan*, 97 W.Va. 563, 568, 125 S.E. 583, 585 (1924). In the instant case, the trial court in effect found that the appellees were not common carriers as a matter of law. In doing so, the lower court committed error. Whether or not the appellees were acting as common carriers in this instance is a question of fact. There was sufficient testimony in the record upon which to base such a determination; therefore, the question should have been submitted to the jury.

In addition, the trial court abused its discretion in refusing to permit the appellants to amend their complaint to include the claim that the appellees were acting as common carriers, and should have been held to that standard of conduct. Rule 15(b), W.Va.R.C.P., permitting the amendment of pleadings to conform to the evidence, is to be liberally applied so that the merits of the action may be considered. *Tennant v. Craig*, 156 W.Va. 632, 195 S.E.2d 727 (1973). Further, we have said that:

> "[M]otions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue."

Syllabus point 3, *Rosier v. Garron, Inc.*, 156 W.Va. 861, 199 S.E.2d 50 (1973), *in part.*

The appellants made their common carrier theory known to the court and to the appellees at least one month before trial, when they filed their trial brief. The record shows that the appellees were aware of the common carrier claim, and were prepared to meet the argument at trial. Therefore, we find that they were not surprised by this assertion; nor could

---

4. *See, e.g., W.Va. Code,* 24A–1–2, defining those carriers subject to regulation by the Public Service Commission.

5. *See also State of Washington ex rel. Stimson Lumber Co. v. Kuykendall,* 275 U.S. 207, 48 S.Ct. 41, 72 L.Ed. 241 (1927); and *United States v. Stephen Brothers Line,* 384 F.2d 118 (5th Cir., 1967).

they have been prejudiced by allowing the amendment.

## II

■ At common law, common carriers were insurers of property intrusted to them, with certain exceptions. As we held in syllabus point 1 of *McGraw v. B. & O. R.R. Co.*, 18 W.Va. 361 (1881):

> "A common carrier at common law is liable for the loss or damage to goods received for transportation from whatever cause arising, except the act of God, the public enemy or the conduct of the owner of the goods unless such loss or damage arises from the nature and inherent character of the property carried, provided he has used foresight, diligence, and care to avoid such damage and loss."

*See also Maslin v. B. & O. R.R. Co.*, 14 W.Va. 180, 189 (1878).

■ The appellees contend that the damage to the appellants' home was not caused by their negligence, but by a defect in the tire of the mobile home, which caused it to blow out. In syllabus point 1 of *A.F. Thompson Mfg. Co. v. Chesapeake & O. Ry. Co.*, 93 W.Va. 3, 115 S.E. 877 (1923), we recognized the validity of this defense:

> "A common carrier of goods, if itself not at fault, is not an insurer against loss or damage, caused by a natural infirmity or vice inherent in the goods carried."

The burden of proving such a defect in the goods rests on the carrier. *Thompson, supra.*

Even where one of the above exceptions applies, however, the carrier is not relieved of liability for any damage caused by its failure to exercise reasonable care to protect the goods from such loss or damage. *McGraw, supra,* at 365, 366. As we held in syllabus point 3 of *Baltimore and Ohio R.R. Co. v. Morehead*, 5 W.Va. 293 (1872):

> "A common carrier is liable for all losses that he could have prevented by skill and foresight; and the *onus* is on him to show that the loss was such as he could not have prevented."

■ Thus, if the appellees were acting as common carriers, they were required to observe the highest degree of care for the safety of the mobile home, or suffer liability for any loss. If they are able to prove that there was a defect in the mobile home which caused or contributed to the damages, they must also prove that by the exercise of due care, they could not have prevented the damage.

■ Buster's Garage contended that the "hold harmless" agreement signed by Adkins relieved it of all liability for damages. The appellants disputed the validity and enforceability of this release, contending that it lacked consideration, and was obtained under duress. The enforceability of this alleged agreement is, of course, a question for the jury. If Buster's Garage was acting as a common carrier, however, the release, even if enforceable, would not relieve it of liability for negligence. In syllabus point 1 of *Brown v. Adams Express Co.*, 15 W.Va. 812 (1879), we held:

> "A common carrier for hire by special contract based on a valuable consideration may exempt himself from his common law responsibilities in some respects, but cannot exempt himself from loss or damage which may in any degree be caused by the negligence or misfeasance of himself or his servants."

*Accord, Annese v. Baltimore & O. R.R. Co.*, 87 W.Va. 588, 105 S.E. 807 (1921); *Williamsport Hardwood Lumber Co. v. Baltimore & O.R. Co.*, 71 W.Va. 741, 77 S.E. 333 (1913); *Berry v. West Virginia P. & R. Co.*, 44 W.Va. 538, 30 S.E. 143 (1898); *Maslin v. B. & O. R.R. Co.*, 14 W.Va. 180 (1878). Further, such a contract does not convert a common carrier into a private carrier. *See Brown* and *Maslin, supra.*

## III

■ The appellants contend that the trial court should have applied the doctrine of *res ipsa loquitur* to find that there was sufficient evidence of negligence to present the issue to a jury. We must disagree. In syllabus point 2 of *Royal Furniture Co. v. City of Morgantown*, 164 W.Va. 400, 263 S.E.2d 878 (1980), we said:

"Before the doctrine of *res ipsa loquitur* is applicable, three essentials must exist: 1) the instrumentality which causes the injury must be under the exclusive control and management of the defendant; 2) the plaintiff must be without fault; and, 3) the injury must be such that in the ordinary course of events it would not have happened had the one in control of the instrumentality used due care."

*See also Walton v. Given*, 158 W.Va. 897, 215 S.E.2d 647 (1975).

■ The appellants have failed to establish the existence of these three factors. They allege that Moles was directing and Buster's Garage was pulling the mobile home off the embankment without any assistance; however they do not identify the instrumentality which they contend caused the injury to their mobile home, nor who was in control of it. The cause of the injury was disputed, and arguably could have been attributed to the condition of the home itself. In syllabus point 1 of *Laurent v. United Fuel Gas Co.*, 101 W.Va. 499, 133 S.E. 116 (1926), we held:

"The doctrine of *res ipsa loquitur* cannot be invoked, if defendant does not have control or management of the premises or operations where the accident occurred, or where there is divided responsibility, and the unexplained accident may have been the result of causes over which defendant had no control."

Further, the appellants presented no evidence that the injury in this case was such that in the ordinary course of events would not have happened had the appellees used due care. They merely allege that mobile homes are built to be moved, and that ordinarily, substantial damage is not inflicted during such moves. An examination of our cases reveals that ordinarily, some testimony on this issue is required before the doctrine will be applied.

■ Finally, it appears that the appellants did not choose to rely on *res ipsa loquitur* at trial,[6] but contended that there was sufficient evidence of negligence to submit the question to the jury. We agree with their contentions. The process of moving a mobile home is not so complex that it is beyond the comprehension of the average juror. Therefore, expert testimony was not necessary in this case to establish a standard of care, and to show whether the appellees violated that standard. The appellants' witnesses testified that certain procedures normally used in moving mobile homes were not used in this case, and that sideways movements can destroy the stability of the frames of such homes. This testimony was sufficient to establish a *prima facie* case of negligence. Further, in common carrier cases, evidence of delivery to the carrier of goods in good condition and their delivery to the consignee in bad condition makes out a *prima facie* case of negligence. *C. & O. Ry. Co. v. Thompson Mfg. Co.*, 270 U.S. 416, 422, 46 S.Ct. 318, 320, 70 L.Ed. 659 (1926). Therefore, the trial court erred in directing a verdict for the appellees.

A motion to reverse having been made in this case, such motion is granted and the case is remanded with directions that a new trial be awarded.

Motion to reverse is granted with directions.

---

6. During argument on appellee's motion for a directed verdict, the court, in discussing the apparent lack of evidence of negligence, said: "you have proceeded on what is almost a *res ipsa loquitur* theory." The appellants' counsel replied, "Not necessarily," and proceeded to discuss their evidence of negligence. [Trial Transcript, at 326.]