Edwin **JACOBSON** and Ogda Jacobson, Plaintiffs-Respondents,

v.

**BROADWAY MOTORS, INC.,** a Corporation, and Ford Motor Company, a Corporation, Defendants-Appellants.

No. 24852.

Kansas City Court of Appeals. Missouri.

April 1, 1968.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 3, 1968.

Application for Transfer Denied Sept. 9, 1968.

John J. Kitchin, Henry G. Eager, Kansas City, for Broadway Motors, Inc.

Don B. Roberson, Kansas City, for Ford Motor Co.; Swanson, Midgley, Jones, Eager & Gangwere, Shugart, Thompson & Kilroy, Kansas City, of counsel.

Lillie Knight, Kansas City, for respondents.

SPERRY, Commissioner.

Plaintiffs sued Broadway Motors, an authorized dealer in Ford automobiles, and Ford Motor Company, (both corporations) for damages growing out of their purchase from Broadway of a new Fairlane Ford automobile, manufactured by Ford Motor Company. At the close of plaintiffs' evidence the court, upon motion of both defendants, directed a verdict for both defendants and entered judgment accordingly. Thereafter, the court sustained plaintiffs' motion for new trial. Defendants have appealed.

Plaintiffs pleaded that Broadway is an authorized dealer in Ford automobiles, manufactured and distributed by Ford Motor Company; that on September 14th, 1964, they purchased and paid the full purchase price for a new Ford automobile from Broadway; that, as an inducement to them to purchase the vehicle, both defendants warranted it to be free from defects in materials and workmanship for a period of twenty-four months from the date of delivery or until it had been driven twenty-four thousand miles, whichever came first, "and evidenced said warranty by their written instrument".

They alleged a breach of warranty because of defects in the wiring system; that, when the automobile had been driven approximately eleven hundred miles and within less than twenty-four months (three months) after its purchase and delivery, the defective wiring system caused the motor to catch fire, resulting in extensive damages to the automobile; that plaintiffs immediately notified Broadway of the fire; that Broadway caused the vehicle to be towed to its place of business in Kansas City, Missouri; that plaintiffs requested that the automobile be repaired according to the provisions of the warranty; that Broadway made said repairs but refused to release the automobile to plaintiffs until they paid its charge therefor. They prayed judgment for actual damages in the sum of $2500.00, and for punitive damages in the sum of $5000.00. They later dismissed the count on punitive damages.

Defendant, Broadway, answered. It admitted the sale of the automobile, that it issued its written warranty thereon, and filed a copy of said warranty as a part of its pleadings. It denied other allegations

and denied liability. Defendant Ford answered. It admitted its corporate capacity, denied every other allegation, and prayed to be discharged.

The written warranty appears on the back of "buyer's order", signed by plaintiffs and filed by Broadway. It was stated therein that the warranty constitutes "a part of this order with the same effect as if it were printed above my signature. It is further understood and agreed that the terms and conditions on the front and back thereof comprise the entire agreement pertaining to this purchase * * *".

The terms of the warranty are as follows:

### "DEALER WARRANTY

"Dealer warrants to Purchaser (except as hereinafter provided) each part of each Ford Motor Company product sold by Dealer to Purchaser to be free under normal use and service from defects in material and workmanship until such product has been driven, used or operated for a distance of twenty-four thousand (24,000) miles or for a period of twenty-four (24) months from the date of delivery to Purchaser, whichever event first shall occur. Dealer makes no warranty whatsoever with respect to tires or tubes or parts adjustments or replacements that should be performed as normal maintenance operations as described in the owners manual. Dealer's obligation under this warranty is limited to replacement of, *at Dealer's location, or credit for, such parts as shall be returned to Dealer with transportation charges prepaid and as shall be acknowledged by Dealer to be defective.* This warranty shall not apply to any Ford Motor Company product that has been subject to *misuse, negligence or accident,* or in which *parts not made or supplied by Ford Motor Company are used* if, *in the sole judgment of Dealer,* such use

affects its performance, stability, or reliability, or *which shall have been altered or repaired outside of Dealer's place of business* in a manner which, *in the sole judgment of the Dealer,* affects its performance, stability, or reliability. This warranty is expressly in lieu of all other warranties, express or implied, and of all other obligations or liabilities on the part of Dealer, except such obligation or liability as Dealer may assume by its Authorized Ford Dealer's Service Policy or separate written instrument". (Emphasis ours.)

The evidence consisted of the testimony of Mrs. Jacobson, who appeared at the trial, that of Mr. Jacobson who, by reason of ill health, gave his deposition which was read in evidence, and the testimony of Mr. Pener, a member of the Kansas City Fire Department who identified the official report of a representative of the department, who answered the call to the fire. The report, a public record, was admitted in evidence except as to that portion thereof wherein the cause of the fire was stated to be a defective carburetor. Mr. Jacobson, a retired supervisor of maintenance of the Kansas City Park Department, suffers from physical disability. His memory was not too good. His testimony was corroborative of that given by Mrs. Jacobson.

Mrs. Jacobson stated that plaintiffs had purchased three Ford automobiles, prior to September 13th, 1964, from Broadway Motors; that, on each occasion, they dealt with Mr. Benz; that they notified him that they wanted to buy a new car; that he brought the car here involved to their house and showed them the warranty covering it; that they agreed to buy it and, the next day, September 14th, 1964, they accepted delivery, paying $2985.00 as full purchase price; that Mr. Jacobson, for all practical purposes, did not operate it; that she operated it only in Kansas City, on trips to purchase groceries, attend church services and other short drives; that she

did not drive it in inclement weather; that it was never "stuck" in snow, ice, or mud; that it gave no trouble of any kind; that it operated "as a new car should"; that she operated it on the day before the fire and placed it in her garage; that it was always stored in her garage and never stood on the street; that it had not been abused or misused; that it had been driven a total of about eleven hundred miles; that, on the day of the fire, December 4th, 1964, Mr. Jacobson left in the car to go to Milgram's grocery company, a distance of about two miles; that she was at home and knew when he left; that he later came home in a cab and reported the fire.

Mr. Jacobson said that he drove to the Milgram parking lot and, while sitting in the car, waiting for a parking stall to be vacated, a man came and took him out of the car saying that it was on fire; that he saw smoke coming from the motor but saw no blaze; that the fire department arrived within minutes and extinguished the fire; that he telephoned Broadway to tow the car to its place of business. He said that there had been a very light snow and there was slush in the parking lot but that there was no snow or ice; that the car was not stuck in snow or ice while it was in his possession.

There was testimony to the effect that plaintiffs notified Broadway not to repair the car until they had consulted their insurance company; that they later notified Broadway to repair the car and were not told that Broadway would not repair it under the warranty; that when Mrs. Jacobson went to get the car Broadway demanded to be paid, because "the warranty did not cover the fire"; that no other reason was given for refusal to repair; that if plaintiffs had known that Broadway would not repair the car under the warranty, they would not have permitted the repairs to be made there; that they were not told that the fire began in the transmission, (as appears to have been indicated by defendant's counsel in his opening statement) or that the transmission had been damaged; that

plaintiffs never noticed any defect in the transmission; that no one at Broadway ever· said that the damage was due to abuse of the car; that no damaged parts removed by Broadway from the car were ever shown to them; (counsel for defendant admitted in oral argument that his client did not know what was done with the damaged parts that were removed). Mrs. Jacobson stated that the parts removed had been destroyed; that, since repair, evidence of the fire is apparent and that, when the motor gets hot, it stinks; that she paid the bill for repairs, as itemized, for $413.17, because they needed the car. She stated that she doesn't know what caused the damage.

■ Under the situation presented by the record here we must follow the established rule. We will accept as true all of the facts and circumstances which plaintiffs' evidence tends to prove and we will draw all reasonable inferences therefrom in support of their theory and right of recovery. Kap-Pel Fabrics, Inc. v. R. B. Jones & Sons, Inc. (Mo.App.), 402 S.W.2d 49, 52. All of the evidence came from their testimony and from other evidence offered and received on behalf of plaintiffs. There are no conflicts in the evidence.

■ The written warranty pleaded and relied on by plaintiffs is binding only on Broadway Motor Company. Ford Motor Company is not a party to it or bound by it.

The judge who wrote the *first* court opinion had no book precedents for his guidance. He must, necessarily, have relied on logic and common sense in his endeavor to arrive at a fair, equitable and just decision, based on the established facts. We are confronted with a somewhat analogous situation. We are cited to no Missouri decision based on these identical facts. However, there are some general principles established as precedents, available for our guidance.

■ Defendant sold this new automobile to plaintiffs at a fair price. There was a written buyer's contract prepared by Broadway, which constituted the entire contract between the parties. The quoted "Dealer Warranty" was a part of that instrument. It was therein stated that "Dealer" warranted to purchaser, subject to named exceptions, each part of the automobile "to be free under normal use and service from defects in material and workmanship" until it had been driven for a distance of twenty-four thousand (24000) miles or for a period of twenty-four (24) months. The evidence adduced shows that this car at the time the fire occurred, was covered by the warranty. There is not a scintilla of evidence to prove, or which tends to prove any exception named in the warranty; yet, the car was damaged by an unexplained fire in or on the motor. The record is completely barren as to what actually caused the fire. The inevitable inference to be drawn here is that the fire was caused by a defect in material or workmanship.

Williams v. Ford Motor Company (Mo. App.), 411 S.W.2d 443, was a case on an *implied* warranty of fitness. Defendants were the manufacturer and the dealer or vendor. Plaintiff obtained a judgment for $15000.00 because of personal injuries she suffered when the steering mechanism of her car failed to function properly and it struck a tree. At 1.c. 447, the court said: "* * * Opinion evidence is not the only way of showing a defect in the steering mechanism: the existence of a defect may be inferred, from circumstantial evidence. See Frumer and Friedman, Products Liability par. 12.03(9) and cases there cited. In the usual operation of a new automobile, properly manufactured, it turns in the direction it is steered. The corollary is that if a new automobile is properly operated but does not turn in the direction it is steered, then the automobile is not properly manufactured. * * *". For all purposes here, this was a new automobile. The fact that the motor caught fire while the vehicle was standing on a level parking lot, gives rise to an inference that it was not properly manufactured; that the fire was caused by defective materials or workmanship.

In Allen v. Brown, 181 Kan. 301, 310 P. 2d 923, the court said:

"* * * The purchaser of a new automobile does not know the precise cause, and the dealer with his mechanics may, after calling in the factory experts and representatives, take many months to locate the defect.

"Under an express warranty as alleged in the petition, it would place a tremendous burden upon the purchaser of a new motor vehicle to find the precise part or parts of the vehicle which were defective and direct the dealer to replace them or remedy the defect. If the operation of such vehicle is mechanically defective and the automobile is returned to the dealer for the purpose of correcting these defects, it is incumbent upon the dealer to find such defective part or parts and replace them pursuant to the terms of the warranty or to locate the assembly that has been improperly assembled and remedy the defect.

"This situation was recognized in a Louisiana case on a 'new car guarantee' similar to the warranty in the case at bar, Cobb v. Truet, La.App., 11 So.2d 120, 121, where the court said:

" 'We experience little difficulty in concluding that the car sold to plaintiff was not in good running order, not serviceable at the time it was purchased, and had such vices and defects as to prevent the normal, safe and comfortable use contemplated by the parties.' "

■ In the case at bar plaintiffs were required, by the terms of the sales contract, to deliver the defective, non-operable

automobile to Broadway Motors which, under the warranty, had the duty to determine the cause of the trouble and, if due to defective material or workmanship, to repair and correct the defective condition. This is the condition of the warranty. This should be the duty of manufacturers and vendors of new automobiles because such vehicles are highly sophisticated instrumentalities, the mechanism of which consists of innumerable intricate parts, (the majority of which are inclosed in shields), concealed from the view of an ordinary purchaser, or even a skilled mechanic. Laws governing warranties, express and implied, should be so administered as to be fair to all parties concerned. Such warranties should be meaningful. To rule in this case as defendants wish us to do, would be to leave the buyers of new automobiles subject to the delusion of warranties and yet without real protection. Consumers keep the automobile industry solvent and prosperous. To rule as defendants ask would not promote the welfare of buyers, dealers, or manufacturers.

Plaintiffs made a submissible case as to Broadway. Neither defendant offered any evidence as to the exact cause of the fire, although Broadway had the automobile in its charge for a period of several weeks and made repairs on it so that it is now mechanically operable. It destroyed the used parts that were removed. It offered no evidence of abuse or misuse. In the interests of justice the case should be retried.

The order granting a new trial is affirmed and the cause remanded.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. All concur.