403 S.E.2d 189

Gary W. ANDERSON and Rebecca S. Anderson

v.

CHRYSLER CORPORATION, a Corporation, and Country Club Chrysler–Plymouth, Inc., a Corporation.

No. 19666.

Supreme Court of Appeals of West Virginia.

March 15, 1991.

Richard E. Hamstead, Edward R. Kohout, Hamstead, Hamstead & Williams, Morgantown, for Gary W. Anderson and Rebecca S. Anderson.

John E. Busch, Busch, Jory, Smith & Talbott, Elkins, for Chrysler Corp.

Jerald E. Jones, West & Jones, Clarksburg, for Country Club Chrysler–Plymouth, Inc.

MILLER, Chief Justice:

Gary Anderson and Rebecca Anderson, his wife, the plaintiffs below, appeal a final order of the Circuit Court of Harrison County, entered March 9, 1990. The Andersons contend that the trial court erred when it granted the motion of Chrysler Corporation (the manufacturer) and Country Club Chrysler–Plymouth, Inc. (the

dealership) [1] for directed verdict. The issue on appeal is whether, in a products liability action, a plaintiff can make a *prima facie* case with only circumstantial evidence.

## I.

### *Facts*

On September 15, 1980, the Andersons purchased a new 1980 Chrysler Cordoba from the dealership. While driving home from the showroom, the Andersons noticed several problems with the car, including malfunctions of its brake lights, headlights, and radio. The following day, the Andersons returned the car to the dealership, where the car was allegedly repaired. However, the electrical problems persisted, and during the following four months, the Andersons had to have the car serviced six to eight times.[2] Within four weeks of the date of purchase, the car's wiring harness, which is located underneath the dashboard, had to be replaced.

The car was last serviced by the dealership on December 22, 1980. As in the past, the car's headlights and brake lights were not operating properly, the radio was fading in and out, and the door chimes were malfunctioning. The next day, after being informed by an employee of the dealership that the car had been fixed, Mrs. Anderson picked it up.

Mrs. Anderson immediately noticed the same electrical problems, but decided to wait until after Christmas before having the car serviced once again. Within a few hours, while driving near Monongah, West Virginia, the Andersons detected a burning odor coming from the car. Soon thereafter, they saw smoke rising from underneath the dashboard. Flames quickly followed. Within minutes, the car was engulfed by fire and completely destroyed.

The Andersons asked Chrysler on numerous occasions to either replace the destroyed vehicle with a new car or refund the purchase price. Chrysler refused. Left with no other alternative, the Andersons filed suit alleging five causes of action: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) negligent repair; (4) violation of the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act (Magnuson–Moss Act), 15 U.S.C. § 2301, *et seq;* and (5) strict liability in tort.[3]

At trial, Mrs. Anderson and Captain Mark Tenney of the Monongah Volunteer Fire Department testified.[4] Mrs. Anderson testified about the initial and continuous problems with the vehicle's electrical system. Moreover, she testified that the vehicle had been repaired exclusively by the dealership and that the car had been serviced by the dealership on the day before it caught fire. Captain Tenney, after being qualified as a trained fireman, testified about the general characteristics of electrical fires. Because Captain Tenney had not been present when the car caught fire and had not inspected the vehicle after it was destroyed, the trial court refused to allow him to give his opinion as to the fire's origin.

After presenting these two witnesses, the plaintiffs rested. Chrysler immediately made a motion for a directed verdict. The trial court granted Chrysler's motion because the Andersons had not presented direct evidence of the specific defect in the car that caused the fire.

## II.

### *Directed Verdict*

■ When a plaintiff's evidence does not establish a *prima facie* right of recovery, the defendant's motion for directed verdict should be granted. *Totten v. Adongay,*

---

1. We will refer to Chrysler Corporation, Inc., and Country Club Chrysler–Plymouth, Inc., collectively as "Chrysler."

2. The car was serviced exclusively by the dealership.

3. The Andersons did not allege a violation of the Magnuson–Moss Act or a cause of action for strict liability in tort until they amended their complaint on November 28, 1989.

4. Mr. Anderson was unable to testify at trial because he was working in Virginia.

175 W.Va. 634, 337 S.E.2d 2 (1985); *Hinkle v. Martin,* 163 W.Va. 482, 256 S.E.2d 768 (1979); *Pinfold v. Hendricks,* 155 W.Va. 489, 184 S.E.2d 731 (1971). "However, it is equally established that a claim should remain within the hands of the jury unless manifest insufficiencies in the evidence compel otherwise." *Totten v. Adongay,* 175 W.Va. at 635, 337 S.E.2d at 3. As we held in the Syllabus of *Nichols v. Raleigh–Wyoming Coal Co.,* 112 W.Va. 85, 163 S.E. 767 (1932):

> "Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence."

*See also Boyce v. Lopez,* 183 W.Va. 169, 394 S.E.2d 768 (1990); *Criss v. Criss,* 177 W.Va. 749, 356 S.E.2d 620 (1987); *Covey v. Fields,* 177 W.Va. 481, 354 S.E.2d 413 (1987).

With these standards in mind, we turn to whether the plaintiffs' evidence, taken in the most favorable light, established a *prima facie* case. Although the Andersons asserted a wide range of theories in their complaint, the evidence at trial focused on three of those theories—strict liability in tort and breach of express and implied warranty.

### III.

#### *Strict Liability in Tort*

The seminal case in West Virginia on strict liability in tort is *Morningstar v. Black & Decker Manufacturing Co.,* 162 W.Va. 857, 253 S.E.2d 666 (1979). In *Morningstar,* we announced a general test for establishing a cause of action based on strict liability: "whether the involved product is defective in the sense that it is not reasonably safe for its intended use." Syllabus Point 4, in part. In Syllabus Point 3 of *Morningstar,* we summarized the general theory of a strict liability in tort cause of action:

> "The cause of action covered by the term 'strict liability in tort' is designed to relieve the plaintiff from proving that the manufacturer was negligent in some particular fashion during the manufacturing process and to permit proof of the defective condition of the product as the principal basis of liability."

Three years later, in *Star Furniture Co. v. Pulaski Furniture Co.,* 171 W.Va. 79, 297 S.E.2d 854 (1982), we considered whether strict liability in tort should be available when the recovery sought is solely for property damage as opposed to situations where some physical injury is occasioned by the defective product. In *Star Furniture,* the store was damaged by a fire caused by a defective clock that Star Furniture had purchased from Pulaski Furniture. In Syllabus Point 1 of *Star Furniture, supra,* we held: "Strict liability in tort may be used to recover for property damage when the defective product damages property only." We did limit recovery for property damage caused by a defective product to situations where the damage was attributable to a "sudden calamitous event." Syllabus Point 3, in part, *Star Furniture Co. v. Pulaski Furniture Co., supra.*[5]

In *Capitol Fuels, Inc. v. Clark Equipment Co.,* 181 W.Va. 258, 382 S.E.2d 311 (1989), recovery was sought for damages to a front-end loader that caught fire because of a defective design. We were asked to reconsider our holding in *Star Furniture* in light of the United States Supreme Court's decision in *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).[6] We declined the invitation and re-

---

5. Syllabus Point 3 of *Star Furniture* states: "In West Virginia, property damage to defective products which results from a sudden calamitous event is recoverable under a strict liability cause of action. Damages which result merely because of a 'bad bargain' are outside the scope of strict liability."

6. In *East River,* the United States Supreme Court held that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." 476 U.S. at 871, 106 S.Ct. at 2302, 90 L.Ed.2d at 877. (Footnote omitted). In *East River,* ship turbines

iterated that "[i]n order to recover under *Star Furniture,* the damage to the product must result from a sudden calamitous event attributable to the dangerous defect or design of the product itself." *Capitol Fuels, Inc. v. Clark Equip. Co.,* 181 W.Va. at 260, 382 S.E.2d at 313.

Chrysler argues that the above-quoted language in *Capitol Fuels* dictates the outcome of this case. Chrysler contends that *Capitol Fuels* established a two-part test: (1) whether there was a calamitous event, and (2) if so, whether that event was caused by a defect in design or manufacture of the product. Although there is no doubt here that the fire was a calamitous event, Chrysler argues, and indeed the trial court found, that the Andersons failed to prove that a defect in the car caused the fire.

■ At bottom, Chrysler argues that proof of a product's defect must be made with direct evidence. We disagree. Most other jurisdictions hold that it is not necessary to identify the specific defect that caused the damage and that circumstantial evidence may be sufficient. In particular, courts have inferred negligence where it is shown that the accident would not have occurred unless the product was defective. In this connection, it must be shown that the product was not subject to abnormal use and that there were no secondary causes for the damage. The Pennsylvania Supreme Court summarized this concept in *Rogers v. Johnson & Johnson Products, Inc.,* 523 Pa. 176, 181, 565 A.2d 751, 754 (1989):

"In most instances the plaintiff will produce direct evidence of the product's defective condition. In some instances, however, the plaintiff may not be able to prove the precise nature of the defect in which case reliance may be had on the

'malfunction' theory of product liability. This theory encompasses nothing more than circumstantial evidence of product malfunction.... It permits a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction.... It thereby relieves the plaintiff from demonstrating precisely the defect yet it permits the trier-of-fact to infer one existed from evidence of the malfunction, of the absence of abnormal use and of the absence of reasonable, secondary causes." (Citations omitted).

*See also Harrell Motors, Inc. v. Flanery,* 272 Ark. 105, 612 S.W.2d 727 (1981); *Wakabayashi v. Hertz Corp.,* 66 Haw. 265, 660 P.2d 1309 (1983); *Garrett v. Nobles,* 102 Idaho 369, 630 P.2d 656 (1981); *Tweedy v. Wright Ford Sales, Inc.,* 31 Ill.App.3d 72, 334 N.E.2d 417 (1975), *aff'd,* 64 Ill.2d 570, 2 Ill.Dec. 282, 357 N.E.2d 449 (1976); *Western Sur. & Casualty Co. v. General Elec. Co.,* 433 N.W.2d 444 (Minn.App.1988); *Stackiewicz v. Nissan Motor Corp. in USA,* 100 Nev. 443, 686 P.2d 925 (1984); *Landahl v. Chrysler Corp.,* 144 A.D.2d 926, 534 N.Y.S.2d 245 (1988); *Buttrick v. Arthur Lessard & Sons, Inc.,* 110 N.H. 36, 260 A.2d 111 (1969); *Cincinnati Ins. Co. v. Volkswagen of Am., Inc.,* 29 Ohio App.3d 58, 502 N.E.2d 651 (1985). *See generally* W. Prosser, *Handbook of the Law of Torts* § 103 (4th ed. 1971); Annot., 65 A.L.R.4th 346 (1988 & Supp.1990).

This law is not foreign to us. We have established a similar rule in medical malpractice cases. We have held that if the malpractice is so obvious that the average juror using common knowledge would be able to understand it, then expert testimony is not necessary. *See, e.g., Totten v.*

---

were damaged when they malfunctioned as a result of improper design. In Syllabus Point 2 of *Capitol Fuels,* we pointed out that this type of malfunction would not qualify under our calamitous event test:

"Under the 'bad bargain' concept of *Star Furniture Co. v. Pulaski Furniture Co.,* [171] W.Va. [79], 297 S.E.2d 854 (1982), the fact that the product may be flawed or defective, such that it does not meet the purchaser's

expectations or is even unusable because of the defect, does not mean that he may recover the value of the product under a strict liability in tort theory. The purchaser's remedy is through the Uniform Commercial Code. In order to recover, the damage to the product must result from a sudden calamitous event attributable to the dangerous defect or design of the product itself."

*Adongay, supra;*[7] *Buskirk v. Bucklew,* 115 W.Va. 424, 176 S.E. 603 (1934); *Howell v. Biggart,* 108 W.Va. 560, 152 S.E. 323 (1930). In *Adkins v. Slater,* 171 W.Va. 203, 209, 298 S.E.2d 236, 242 (1982), we reversed a directed verdict for the defendant who had negligently damaged a mobile home while attempting to relocate it, stating: "The process of moving a mobile home is not so complex that it is beyond the comprehension of the average juror. Therefore, expert testimony was not necessary in this case to establish a standard of care, and to show whether the appellees violated that standard."

■ We agree with the foregoing authorities, and, accordingly, we hold that circumstantial evidence may be sufficient to make a *prima facie* case in a strict liability action, even though the precise nature of the defect cannot be identified, so long as the evidence shows that a malfunction in the product occurred that would not ordinarily happen in the absence of a defect. Moreover, the plaintiff must show there was neither abnormal use of the product nor a reasonable secondary cause for the malfunction.

■ We conclude that the Andersons met their burden of proof. The car had electrical problems from the day it was purchased, notwithstanding the Andersons' numerous attempts to have the electrical problems corrected. All of the repairs were done by the dealership. One of the car's primary electrical components, the wiring harness, was replaced only four weeks after the car was purchased and was located under the dashboard where the fire originated. The car had been driven less than 2500 miles and caught fire the day after it was serviced for electrical problems by the dealership.

Finally, it is quite obvious that a fire starting under the dashboard of a new car under the circumstances outlined above would not occur in the absence of some defect. A reasonable trier of fact could infer that the fire arose from a defect in the car's electrical system. There was no evidence of abnormal use or of any reasonable secondary cause of the malfunction. Accordingly, we find that the trial court erred in directing a verdict on the Andersons' action in strict liability in tort.

## IV.

### *Warranty*

■ Whether the warranty is expressed or implied, the same analysis is used by courts when determining whether a plaintiff has made a *prima facie* case of breach of warranty. Nearly thirty years ago, in Syllabus Point 2 of *Payne v. Valley Motor Sales, Inc.,* 146 W.Va. 1063, 124 S.E.2d 622 (1962), *modified on other grounds, Dawson v. Canteen Corp.,* 158 W.Va. 516, 212 S.E.2d 82 (1975), we dealt with an express warranty on a new sale and held: "A breach of warranty may be proved by circumstantial evidence as well as direct evidence, but the jury must not be left to guess the cause of the alleged breach."

We have used virtually the same rule for implied warranties arising under our Uniform Commercial Code (UCC). In *Jones, Inc. v. W.A. Wiedebusch Plumbing & Heating Co.,* 157 W.Va. 257, 201 S.E.2d 248 (1973), which involved water damage from a defective fire sprinkler head, we dealt with the implied warranties of merchantability and fitness. W.Va.Code, 46–2–314 and –315. In *Jones,* there was no evidence of the specific defect in the sprinkler head; however, there was evidence that the sprinkler head had been installed only three months before the accident and had not been repaired or otherwise adjusted since that date. Moreover, there was no evidence presented that a secondary cause made the sprinkler head malfunction. We

---

7. Syllabus Point 4 of *Totten* states:
   "In medical malpractice cases where lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to non-complex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience, failure to present expert testimony on the accepted standard of care and degree of skill under such circumstances is not fatal to a plaintiff's *prima facie* showing of negligence."

concluded that a *prima facie* case had been made, stating in Syllabus Point 5, as modified, of *Jones:*

> "A plaintiff, who seeks to recover damages for breach of an [express or an] implied warranty for fitness of purpose, is not required to exclude every possible cause for the defective condition of the goods purchased and may establish the defective nature of the goods by circumstantial evidence." [8]

Both *Payne* and *Jones* are in accord with numerous jurisdictions that hold that in either an express or an implied warranty case, direct evidence of the defect is not required. *See, e.g., Stewart v. Motor Corp.*, 553 F.2d 130 (D.C.Cir.1977); *McCrossin v. Hicks Chevrolet, Inc.*, 248 A.2d 917 (D.C.App.1969); *Bollmeier v. Ford Motor Corp.*, 130 Ill.App.2d 844, 265 N.E.2d 212 (1970); *Jacobson v. Broadway Motors, Inc.*, 430 S.W.2d 602 (Mo.App. 1968); *Stutts v. Green Ford, Inc.*, 47 N.C. App. 503, 267 S.E.2d 919 (1980); *Vernon v. Lake Motors*, 26 Utah 2d 269, 488 P.2d 302 (1971); *Ford Motor Co. v. Kuhbacher*, 518 P.2d 1255 (Wyo.1974). *See generally* 2 *American Law of Products Liability* § 24.5 (3d ed. 1987 & Supp.1991).

For example, in *McCrossin*, the plaintiff's new car was destroyed by fire, which she alleged was caused by a faulty carburetor, but the specific defect could not be identified. The plaintiff proceeded on a warranty theory, but did not present evidence of the specific defect. The trial court granted the manufacturer's motion for judgment notwithstanding the verdict. The District of Columbia Court of Appeals reversed and explained that "[b]ecause of the severe damage to the car caused by the fire, plaintiff was unable to offer direct proof of the defect. In such a situation, she is permitted to prove the existence of the defect by circumstantial evidence." 248 A.2d at 919–20. (Citations omitted).

The Utah Supreme Court, in *Vernon v. Lake Motors*, 26 Utah 2d at 274, 488 P.2d at 306, was confronted with facts similar to ours and stated: "[C]ircumstantial evi-

dence is adequate as proof if its quality is such that the jury believes that the greater probability of truth lies therein. A fire breaking out underneath a dashboard is a circumstance which cries out for an explanation." (Footnote omitted).

As we have earlier indicated under our discussion of the circumstantial evidence standard in the strict liability in tort theory, there was sufficient evidence to put this case before the jury. The plaintiffs' evidentiary showing in either case is the same.

### V.

#### *Warranty Exclusion*

Chrysler argues that the Andersons cannot recover for breach of express warranty because damage caused by fire is expressly excluded. The warranty provides, in pertinent part:

> "**BASIC COVERAGE**—For the first 12 months or 12,000 miles (20,000 km), whichever occurs first, any part of this vehicle supplied by Chrysler, except tires, which proves defective in normal use will be repaired or replaced by the Chrysler Corporation Selling Dealer using new or remanufactured parts. The coverage applies to all owners of this vehicle during the above time and mileage limitations.
>
> \*     \*     \*     \*     \*     \*

#### WHAT IS NOT COVERED

> \*     \*     \*     \*     \*     \*

> "Repairs required as a result of failure to properly care or maintain this vehicle, fire, accident, abuse or negligence[.]"

Chrysler does not argue that its damages are limited only to the value of the repair or replacement of the defective part, and probably could not where a defective automobile is brought to the seller for repairs, and the repairs are unsuccessful. In such circumstances, courts have found that the car's owner is entitled to the full damages occasioned by the defect. *See, e.g., Massey–Ferguson, Inc. v. Laird*, 432 So.2d 1259 (Ala.1983); *Norman Gershman's*

---

**8.** Chrysler does not argue the applicability of an express or an implied warranty to this case, but only that the Andersons failed to prove that the car was defective.

*Things to Wear, Inc. v. Mercedes–Benz of N. Am., Inc.,* 558 A.2d 1066 (Del.Super. 1989); *Volkswagen of Am., Inc. v. Novak,* 418 So.2d 801 (Miss.1982); *Welch v. Fitzgerald–Hicks Dodge, Inc.,* 121 N.H. 358, 430 A.2d 144 (1981); *McCullough v. Bill Swad Chrysler–Plymouth, Inc.,* 5 Ohio St.3d 181, 449 N.E.2d 1289 (1983); *Mercedes–Benz of N. Am., Inc. v. Dickenson,* 720 S.W.2d 844 (Tex.Civ.App.1986).

We are not directed to any case where the language excluding loss by fire has been considered. There are several cases which are factually analogous, such as *Jacobson v. Broadway Motors, Inc., supra,* where the plaintiff purchased a new car, and within three months the vehicle was damaged by fire originating in an unknown area of the motor. The vehicle was still under warranty similar to the one involved here. The dealership argued that because the warranty limited its responsibility to the repair or replacement of the defective parts, the dealership was not responsible for the damage caused by the fire. The Missouri court rejected this argument, finding that the warranty could not be so easily eviscerated:

> "Laws governing warranties, express and implied, should be so administered as to be fair to all parties concerned. Such warranties should be meaningful. To rule in this case as defendants wish us to do, would be to leave the buyers of new automobiles subject to the delusion of warranties and yet without real protection. Consumers keep the automobile industry solvent and prosperous. To rule as defendants ask would not promote the welfare of buyers, dealers, or manufacturers." 430 S.W.2d at 607.

*See also Volkswagen of Am., Inc. v. Harrell,* 431 So.2d 156 (Ala.1983); *Rose v. Chrysler Motors Corp.,* 212 Cal.App.2d 755, 28 Cal.Rptr. 185 (1963); *Ford Motor Co. v. Gunn,* 123 Ga.App. 550, 181 S.E.2d 694 (1971). *See generally* 2 A.L.R.4th 576 (1980 & Supp.1990).

■ Certainly, these cases, considering a fire loss arising from a defective part in the car, do not hold that damages resulting from a fire are excluded under the repair exclusion sentence. Indeed, a plain reading of this sentence would result in the conclusion that the type of repairs that are excluded from the express warranty to repair or replace defective parts are those resulting from independent causes other than the defective part, i.e., failure to properly care for or maintain the vehicle, fire, accident, abuse or negligence.

■ It should also be noted that independent of the express warranty, at the time this sale was made, the UCC, W.Va. Code, 46–2–101, *et seq.,* was in effect. We have recognized the applicability of UCC warranties to sales of motor vehicles. *See City Nat'l Bank of Charleston v. Wells,* 181 W.Va. 763, 384 S.E.2d 374 (1989). *Cf. Kesner v. Lancaster,* 180 W.Va. 607, 378 S.E.2d 649 (1989) (tractor-loader). The express warranty for the Andersons' car did not attempt to exclude implied warranties as permitted under W.Va.Code, 46–2–316. Rather, this provision stated: "ANY IMPLIED WARRANTY APPLICABLE TO THIS VEHICLE IS LIMITED IN DURATION TO THE DURATION OF THIS WRITTEN WARRANTY." The fire occurred within the twelve-month or 12,000-mile period; thus, the implied warranties of merchantability and fitness apply.[9] *See* W.Va.Code, 46–2–314 and 46–2–315. As we have previously pointed out, the breach of such implied warranties can be proven by circumstantial evidence.[10]

## VI.

### Conclusion

Accordingly, we find that the trial court erred in granting Chrysler's motion for a

---

**9.** In *Payne v. Valley Motor Sales, Inc., supra,* we held no implied warranties existed because we had not adopted the UCC.

**10.** The Andersons could not allege a cause of action under the West Virginia Lemon Law, W.Va.Code, 46A–6A–1, *et seq.,* because that Act applies only to new cars purchased after January 1, 1984. *See* W.Va.Code, 46A–6A–4. If the jury finds that there was a breach of the UCC warranties, the Andersons could recover attorney fees under Section 110(d)(2) of the Magnuson–Moss Act, 15 U.S.C. § 2310(d)(2). *See City Nat'l Bank of Charleston v. Wells, supra.*

directed verdict. The case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.