621 S.E.2d 710

**Kenneth G. BENNETT, Rosilyn K. Bennett, Rebecca A. Bennett, and Bob Bennett Homes, Inc., A West Virginia corporation, Plaintiffs Below, Appellants**

**v.**

**ASCO SERVICES, INC., a West Virginia corporation; Ademco Group, a Division of Pittway Corporation, a foreign corporation; Pittway Corporation, a foreign corporation; System Sensor, a foreign corporation; Honeywell, Inc., a foreign corporation; Chemetronics Caribe Inc., a foreign corporation; Kidde–Fenwal**

Inc., a foreign corporation; Toyota Motor Corporation, a foreign corporation; Toyota Motor Manufacturing, Kentucky, Inc., a foreign corporation; Toyota Motor Manufacturing, U.S.A., Inc., a foreign corporation; Toyota Motor Sales, U.S.A., Inc., a foreign corporation; Cobb and Coulson Auto Sales, Inc., d/b/a/ C & C Dodge Toyota, a foreign corporation; and Ohio Farmers Insurance Company, a foreign corporation; Westfield Insurance Company, a foreign corporation; Westfield Companies, a foreign corporation; Westfield Group, a foreign corporation, Defendants Below, Appellees

No. 31947.

Supreme Court of Appeals of
West Virginia.

Submitted June 7, 2005.

Decided July 8, 2005.

Marvin W. Masters, Esq., Richard A. Monahan, Esq., Masters & Taylor, Charleston, West Virginia, Attorneys for Appellants.

Daniel A. Ruley, Esq., Pullin, Fowler & Flanagan, Beckley, West Virginia, Attorney for ASCO Services, Inc.

Richard A. Hayhurst, Esq., Parkersburg, West Virginia, George W. Flynn, Esq., Flynn, Gaskins & Bennett, Minneapolis, MN, for Ademco Group, Pittway Corporation, System Sensor & Honeywell Inc.

Brent K. Kesner, Esq., Ernest G. Hentschel, II, Esq., Ellen R. Archibald, Esq, Kesner, Kesner & Bramble, Charleston, West Virginia, Attorney for Ohio Farmers.

April C. Morgan Hincy, Esq., John C. Bogut, Jr., Esq., Marla N. Presley, Esq., Wayman, Irvin & McAuley, Pittsburgh, Pennsylvania, Attorneys for Chemetronics Caribe, Inc. and Kidde–Fenwal, Inc.

Thomas V. Flaherty, Esq., Andrew B. Cooke, Esq., Flaherty, Sensabaugh & Bonasso, Charleston, West Virginia, Attorneys for Toyota Motor Corporation.

Dennis C. Sauter, Esq., Thomas J. Hurney, Esq., Myrissa Smith, Esq., Matthew A. Nelson, Esq., Jackson Kelly, PLLC, Charleston, West Virginia, Hugh F. Young, Jr., Esq., Product Liability Advisory Council, Inc. Reston, VA, for Amicus Curiae Product Liability Advisory Council, Inc.

The Opinion was delivered PER CURIAM.

PER CURIAM:

In this appeal from the Circuit Court of Wood County, we are asked to review three orders granting summary judgment to various defendants in a product liability action. The plaintiffs allege that a defect in a Toyota Camry caused a fire in their garage, and that a defect in a home fire alarm system permitted the fire to spread and destroy their home. After the fire, the plaintiffs' insurers allegedly destroyed the vehicle and the alarm system, preventing a thorough investigation of the alleged defects.

In two summary judgment orders, the circuit court dismissed the plaintiffs' claims against two groups of defendants because, as a result of the destruction of the vehicle and alarm system, the plaintiffs could not specifically identify the defect that caused the malfunction in those products. Furthermore, the court believed that the plaintiffs did not rule out all other potential causes for the malfunction in those products. In a third summary judgment order, the circuit court dismissed the plaintiffs' claims against one product manufacturer as barred by the statute of limitation.

As set forth below, we reverse the circuit court's first two summary judgment orders and find evidence sufficient to create a triable question of fact as to whether the product malfunctions were the result of inherent defects. However, we affirm the circuit court's third order finding the plaintiffs' claims against one manufacturer barred by the statute of limitation.

I.

This civil action arises from a residential fire which destroyed the home of the appellants and plaintiffs-below, Kenneth G. and Rosilyn K. Bennett and their daughter, Rebecca A. Bennett, during the early morning hours on March 25, 1998.

In 1995, the Bennetts moved into their new home in Vienna, West Virginia, which had

just been constructed by Mr. Bennett's company, Bob Bennett Homes, Inc. Mr. Bennett contracted with defendant-below ASCO Services, Inc., to install a burglary and fire alarm system in the home. ASCO Services installed an alarm system which contained components manufactured by various subsidiaries of appellee and defendant-below Honeywell, Inc.,[1] and which also contained heat sensors manufactured by appellee and defendant-below Chemetronics Caribe, Inc. ("Chemetronics"). In addition, the Bennetts paid for ASCO Services to monitor the system. As a further precautionary measure, Mr. Bennett purchased battery-operated smoke detectors and placed them throughout the house.

After the alarm system was installed, several false alarms occurred. During these false alarms, verbal warnings of a fire would be issued through speaker boxes placed throughout the house (saying "Fire. Fire. Evacuate the premises immediately."), sirens would sound, and a strobe light located outside the house would flash. Each time a false alarm occurred, the Bennetts would speak with an employee of ASCO Services, and ASCO Services would subsequently inspect and/or repair the system. The Bennetts were repeatedly assured by ASCO Services that the alarm system was functioning properly and safely.

On March 25, 1998, Mrs. Bennett awoke in the night, smelled smoke and heard a battery-operated smoke detector beeping. Mrs. Bennett woke her daughter, then went downstairs to the garage, turned on the lights and saw flames coming from under the hood area of the Bennetts' Toyota Camry which was parked in the middle stall of the garage. She then woke her husband and as he dressed, the telephone began ringing. The caller announced that she was with ASCO Services, and asked if the Bennetts were having a problem. Mr. Bennett contends he responded affirmatively, and asked that fire trucks be sent.

Mr. Bennett went to the garage and saw that the engine area of the Camry was on fire, but the fire was so far advanced that Mr. Bennett could not control it. Experts later estimated that, when it was discovered, the fire had been burning for twenty to thirty minutes. Although firemen arrived shortly thereafter, the Bennetts suffered a total loss of their home and its contents. The Bennetts contend that at no time on the night of the fire did the fire alarm system installed by ASCO Services trigger any audible or visual warnings.

The fire was investigated by the Bennetts' homeowner's insurance carrier, defendant-below Ohio Farmers Insurance Company, and their car insurance carrier, defendant-below Westfield Insurance Company. Mr. Bennett asserts that he informed the insurance company investigators of his belief that the fire started in the Camry, and that the fire spread throughout the house because the fire alarm system failed to operate properly. Ohio Farmers and Westfield removed the Camry from the Bennetts' property and placed it in storage for a complete investigation. Insurance company investigators examined the Camry and concluded that the cause of the fire was "undetermined," and thereafter disposed of the Camry. A few weeks after the fire, Ohio Farmers paid a contractor to tear down the remains of the Bennett's house and haul the debris to a landfill, after allegedly assuring Mr. Bennett that everything necessary for Ohio Farmers' investigation had been removed. Apparently, none of the parties examined or removed any portion of the alarm system for investigation, and the alarm system was destroyed and disposed of in the removal process.

The Bennetts subsequently brought the instant lawsuit against Toyota, Inc.,[2] for al-

1. The parties collectively refer to four appellees and defendants-below as the "Honeywell defendants:" ADEMCO Group, a division of Pittway Corporation; Pittway Corporation; System Sensor; and Honeywell, Inc. The Honeywell defendants manufactured sirens and strobe lights, speaker boxes, smoke detectors, and control panels for the alarm system installed in the appellants' house.

2. The parties collectively refer to five different defendants as the "Toyota defendants:" Toyota Motor Corporation; Toyota Motor Manufacturing, Kentucky, Inc.; Toyota Motor Manufacturing, U.S.A., Inc.; Toyota Motor Sales, U.S.A., Inc.; and Cobb and Coulson Auto Sales, Inc., d/b/a C & C Dodge Toyota.

leged product defects in the Toyota Camry that were the cause of the fire, and against Honeywell and ASCO Services for alleged product defects in the alarm system that allowed the fire to go undetected, thereby resulting in the total destruction of the house. Additionally, the Bennetts brought suit against ASCO Services alleging negligence in the design, installation, and/or maintenance of the alarm system. The Bennetts later filed amended complaints against Ohio Farmers and Westfield for spoliation of evidence, alleging that the insurance companies had impaired the Bennetts' ability to prosecute their lawsuit because of careless destruction of the Toyota Camry and the alarm system. *See Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560 (2003) (discussing the elements of a cause of action for spoliation).

During discovery, in June 2000, the Bennetts were provided documents that identified Honeywell and its subsidiaries as the manufacturer of many of the components of the alarm system. However, the documents also identified Chemetronics as the manufacturer of the heat sensors used in the alarm system, along with a web site for Chemetronics. The Bennetts' experts identified the heat sensors as significant factors in the failure of the alarm system because of their location in the garage and because the sensors failed to operate properly and detect the fire within one minute of ignition as designed to do. The Bennetts' experts also determined that the fire had been burning for 20 to 30 minutes when discovered by the Bennetts. However, the Bennetts presumed that Chemetronics was simply another Honeywell subsidiary. It was not until October 2001, during the deposition of an ASCO Services employee, that the Bennetts discovered that Chemetronics was not a Honeywell subsidiary. Thereafter, in October 2002, the Bennetts filed another amended complaint to include Chemetronics and its parent corporation, Kidde–Fenwal, Inc., as defendants.

After extensive discovery, the defendants filed motions for summary judgment. On December 11, 2003, the circuit court entered three orders granting summary judgment to three groups of defendants: the Toyota defendants, the Honeywell defendants, and Chemetronics. The circuit court's first two orders, granting summary judgment to the Toyota and Honeywell defendants respectively, dismissed the Bennetts' claims of product liability because the Bennetts were unable to identify the precise defects and/or causes of the fire, or identify the defects that caused the failure of the alarm system, because of the destruction and spoliation of the Camry and alarm system. The court found that the circumstantial evidence presented was insufficient to defeat summary judgment because the Bennetts could not show that the fire "would not ordinarily happen in the absence of a defect" and that "there was no reasonable secondary cause for the malfunction." In the third order, the circuit court granted summary judgment in favor of Chemetronics, finding that the appellants' claims were barred by the two-year statute of limitations.[3]

The Bennetts now appeal the circuit court's three orders dated December 11, 2003.

## II.

■ We are asked to review the circuit court's award of summary judgment in favor of several appellees. We review a circuit court's summary judgment ruling under the standard announced in Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), which is as follows: "A circuit court's entry of summary judgment is reviewed *de novo*."

■ In reviewing summary judgment, this Court will apply the same test that the circuit court should have used initially, and must determine whether "it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). We defined a "genuine issue of fact" in Syllabus

---

**3.** Still pending before the circuit court are the appellants' claims against the insurance company defendants for spoliation, and the appellants' claims against ASCO Services for supplying a defective alarm system, and negligent installation and maintenance of the alarm system.

Point 5 of *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995):

> Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

As with the circuit court, we "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion," that is, the appellants. *Painter v. Peavy,* 192 W.Va. at 192, 451 S.E.2d at 758.

We keep these standards in mind in addressing the appellants' arguments.

### III.

The Bennetts argue that summary judgment was inappropriate as to the product liability claims against Toyota and against Honeywell because different conclusions may be drawn from the evidence as to the existence of a defect in the Camry, and as to the existence of a defect in the fire alarm system. The appellants argue that there is a triable issue of fact regarding whether these defects were the cause of the fire and, ultimately, the total loss of the house. We are therefore asked to consider whether the Bennetts have come forward with enough evidence to defeat summary judgment, and to permit a jury to decide whether or not defects existed in the Camry and in the alarm system, whether or not the fire would have happened in the absence of the defect, and whether or not the fire would have totally destroyed their home. The appellants also argue that the circuit court improperly dismissed the claims against Chemetronics as barred by the statute of limitations, maintaining that the time limit for filing their claim should be tolled by the discovery rule, and did not begin to run until the appellants discovered Chemetronics was an entity separate from Honeywell.

### A.

*Circumstantial Evidence of Product Defect—Toyota and Honeywell*

The circuit court granted summary judgment to Toyota, holding that the Bennetts did not establish the existence of a defect in their Toyota Camry, and did not rule out all other potential causes for the fire such that a jury could only conclude that a defect present in the Camry when it left Toyota's control caused the fire. The circuit court, in its order, stated: "Alleging that the 'cause' of the fire was in or around the Toyota, is insufficient to establish a legal 'defect.' "

The court similarly granted summary judgment in favor of Honeywell because the "plaintiffs have no evidence eliminating reasonable secondary causes of the alleged failure of the fire detection and-warning system." Additionally, the circuit court stated that the Bennetts presented no evidence that the products supplied by Honeywell "had a design or manufacturing defect at the time they left control of the Honeywell defendants."

The Bennetts contend that the circuit court erred, arguing that they presented substantial circumstantial evidence of a defect to defeat the summary judgment motion by Toyota. The appellants cite to the extensive testimony of their expert who opined that the cause of the fire was from a defect or failure in the wiring system of the Camry. The Bennetts point out that secondary causes of the fire have been ruled out by both the insurers' investigators, as well as by their expert.

Additionally, the Bennetts contend that they presented sufficient circumstantial evidence to defeat the summary judgment motion by Honeywell. An expert for the Bennetts testified that the existence of a defect in the Honeywell alarm system was likely because, when the Honeywell system simply malfunctions, the system issues audible warnings of a malfunction. The Bennetts argue that the fire alarm system had a defect because it failed to issue any audible or

visual warnings—of either a malfunction or a fire—at any time during the night of the fire. A Bennett expert testified that the failure of the fire alarm system was caused by a defect in the system, by an installation or maintenance error by ASCO Services, or both.

■■■ We adopted a cause of action for strict products liability in *Morningstar v. Black and Decker Mfg. Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979). We held in Syllabus Point 3 of *Morningstar* that the cause of action is "designed to relieve the plaintiff from proving that the manufacturer was negligent in some particular fashion during the manufacturing process and to permit proof of the defective condition of the product as the principal basis of liability." The general test of whether a product is defective was established in Syllabus Point 4, where we held:

> In this jurisdiction the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its intended use. The standard for reasonable safeness is determined not by the particular manufacturer, but by what a reasonably prudent manufacturer's standards should have been at the time the product was made.

■■■ A plaintiff is not required to establish a strict products liability cause of action by identifying the specific defect that caused the loss, but instead may permit a jury to infer the existence of a defect by circumstantial evidence. This Court held in Syllabus Point 3 of *Anderson v. Chrysler*, 184 W.Va. 641, 403 S.E.2d 189 (1991), that:

> Circumstantial evidence may be sufficient to make a *prima facie* case in a strict liability action, even though the precise nature of the defect cannot be identified, so long as the evidence shows that a malfunction in the product occurred that would not ordinarily happen in the absence of a defect. Moreover, the plaintiff must show that there was neither abnormal use of the product nor a reasonable secondary cause for the malfunction.

In adopting this rule in *Anderson*, we reasoned that a product defect may be inferred where there is evidence sufficient for a jury to conclude that the accident would not have occurred unless the product was defective:

> In most instances the plaintiff will produce direct evidence of the product's defective condition. In some instances, however, the plaintiff may not be able to prove the precise nature of the defect in which case reliance may be had on the "malfunction" theory of product liability. This theory encompasses nothing more than circumstantial evidence of product malfunction.... It permits a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction.... It thereby relieves the plaintiff from demonstrating precisely the defect yet it permits the trier-of-fact to infer one existed from evidence of the malfunction, of the absence of abnormal use and of the absence of reasonable, secondary causes.

*Anderson*, 184 W.Va. at 645, 403 S.E.2d at 193 (*quoting Rogers v. Johnson & Johnson Products, Inc.*, 523 Pa. 176, 181, 565 A.2d 751, 754 (1989)).

■■■ Under *Anderson*, while a defect in a product cannot be presumed solely from the fact that an accident occurred, proof that a product malfunctioned—that is, failed to function as it was intended and typically would in normal usage—is circumstantial proof of its defective condition. *Anderson* does not require a plaintiff, to succeed at the summary judgment stage, to conclusively eliminate all possible contributing causes other than a defect for an accident. Instead, a plaintiff is only required to submit evidence that has the capacity to sway the outcome of the litigation, and from which a jury could fairly conclude that the most likely explanation of the accident involves the causal contribution of a product defect.

Under *Anderson*'s malfunction theory, "a plaintiff makes a submissible case of proof that the accident was caused by some unspecified defect and that no other cause is likely.... The plaintiff is not required to eliminate with certainty all other possible causes of the accident. It is sufficient if the evidence reasonably eliminates other causes such as the handling or misuse of the product

by others than the manufacturer, thus permitting the fact finder to find that it was more probably [sic] than not that the product was defective." 2 *Am.L.Prod.Liab.3d* § 31:26 (footnotes omitted). *See also, Restatement (Third) of Torts: Products Liability,* § 3, cmt. c and d [1998] ("The inference of defect may be drawn ... without proof of the specific defect.... [T]he plaintiff must establish by a preponderance of the evidence that the incident was not solely the result of causal factors other than defect at the time of sale. The defect need not be the only cause of the incident; if the plaintiff can prove that the most likely explanation of the harm involves the causal contribution of a product defect, the fact that there may be other concurrent causes of the harm does not preclude liability[.]")

We therefore must consider whether the appellants in the instant case raised triable questions of fact that the products at issue—the Toyota Camry and the Honeywell alarm system—were not reasonably safe for their intended use. We must assess whether the Bennetts introduced evidence with the capacity to sway the outcome of the litigation such that a jury could surmise that the fire, and the subsequent total destruction of the house, resulted from a malfunction in the Toyota Camry and the Honeywell alarm system; that there was no misuse of either product; and that there was no reasonable secondary cause for either malfunction, thus permitting a jury to find that it was more probable than not that either product was defective and a contributing cause of the appellants' loss.

After examining the record, we find sufficient evidence such that a reasonable juror could infer that the fire started in the Toyota Camry as a result of a malfunction, and that the fire would not have ordinarily happened in the absence of a defect. The Bennetts' expert testified that it was his opinion that a defect in the wiring system existed in the Camry, a defect which was the ultimate cause of the fire. Due to the destruction of the Camry, the expert was not able to identify the precise defect in question. Still, the record indicates that the Bennetts introduced sufficient evidence for jurors to conclude that the Camry was regularly maintained and ser-

viced, was not previously exposed to neglect, abuse or abnormal use, and, most importantly, was not being misused at the time the fire started. Sufficient evidence was also offered such that jurors could exclude other reasonable secondary causes for the fire. For instance, an expert hired by Ohio Farmers and Westfield acknowledged that items such as a gasoline can and gasoline-powered equipment located in the garage lacked an ignition source and could not have been an independent cause of the fire. Expert testimony in the record also permits an inference that other reasonable alternative causes for the fire could be ruled out: the fact that Mrs. Bennett turned on the lights in the garage suggested that the electrical wiring was not a source, photographs of the fire scene ruled out other items or vehicles in the garage as the source of the fire, and the burn pattern and main collapse of the garage support the location of the Camry as being the origin of the fire. Accordingly, a genuine issue of material fact clearly exists regarding whether or not a defect in the wiring system caused the Camry to catch on fire.

The Honeywell defendants contend that summary judgment was properly granted because there was no evidence that the components of the alarm system installed in the Bennetts' home were defective when they left Honeywell's control. However, "the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its intended use." Syllabus Point 4, *Morningstar,* 162 W.Va. 857, 253 S.E.2d 666 (1979). We must therefore consider whether the Bennetts offered sufficient evidence—circumstantial or otherwise—to create a triable issue of fact regarding whether the alarm system components were not reasonably safe for their intended use.

After careful consideration of the record, we find that material questions of fact exist regarding whether the Honeywell alarm system malfunctioned as a result of a defect, and was therefore not reasonably safe for its intended use. The record suggests that the fire was burning in the garage for at least twenty to thirty minutes before the Bennetts woke up. The Bennetts' expert testified that

the alarm system should have offered immediate detection of either smoke or heat from the fire, and alerted the Bennetts to the fire in less than one minute based upon the proximity of the heat detectors to where the fire started. Furthermore, the alarm system should have alerted the monitoring company, ASCO Services, of the fire. The record suggests that the alarm system did not alert the Bennetts and never issued any type of warning, aural or visual, throughout the night of the fire. Rather, it was a battery-operated alarm which the Bennetts installed independently that issued warnings. Only after the Bennetts discovered the fire did they receive a telephone call from an ASCO Services employee asking if the Bennetts were having a problem.

The Honeywell defendants assert that, even if its alarm system malfunctioned and failed to operate as intended, the Bennetts should not be allowed to circumstantially prove the existence of a product defect because they cannot rule out all possible secondary causes of the alleged malfunction. The Bennetts, however, maintain that they purchased an alarm system using Honeywell products and parts, and that the alarm system did not activate on the night of the fire—thereby permitting what should have been discovered as a small fire in their garage to rage out of control and totally destroy their home. Furthermore, the alarm system did not detect any malfunction prior to the fire, as it was designed to do, and notify the homeowners that the system needed maintenance or repair.

The Bennetts are not required under *Anderson* to eliminate all other possible causes, or prove that the alleged defect was the only cause, of the malfunction in the alarm system. They are only required to eliminate those causes which would prevent a jury from finding that it was more probable than not that the alarm system was defective. An expert for the Bennetts opined that the failure of the alarm system was caused by a defect in the system or an installation and servicing error by ASCO Services, or both. The Bennetts' evidence suggests that a malfunction caused by a defect in the alarm system is a likely explanation for the destruc-

tion of their home; they need not prove, under *Anderson*—nor certainly under Rule 56(c) at the summary judgment stage—that it was the only explanation. Accordingly, a genuine issue of material fact exists regarding whether or not a defect in the alarm system caused the system not to activate.

Viewing the record in a light most favorable to the appellants, we find that the circuit court erred in granting summary judgment to both Toyota and the Honeywell defendants, and we remand the case for further proceedings.

### B.

#### *Statute of Limitation—Chemetronics*

The circuit court granted summary judgment dismissing the appellants' claims against Chemetronics, filed on October 11, 2002, finding the claims were barred by the two-year statute of limitation. *See W.Va. Code*, 55–2–12. The Bennetts claim that they filed an amended complaint immediately upon discovering in October 2001 that Chemetronics manufactured the heat sensors used in the fire alarm system and acted reasonably and timely, based upon information that they knew or reasonably should have known at relevant times. Chemetronics asserts that the Bennetts reasonably knew or should have known by June 2000 of Chemetronics' potential liability, and that the October 2002 complaint was not timely.

We discussed in *Keesecker v. Bird*, 200 W.Va. 667, 682, 490 S.E.2d 754, 769 (1997), that there are four steps to determining if a claim is barred by the statute of limitation. The first step in analyzing any statute of limitation question is to determine the applicable statute. In this case, *W.Va.Code*, 55–2–12 mandated an action for the injury be filed within two years.

"The second step in evaluating a statute of limitation question is to establish when the requisite elements of the alleged tort occurred, such that the cause of action 'accrued.'" *Keesecker*, 200 W.Va. at 683, 490 S.E.2d at 770. In this case, the cause of action "accrued" on the night of the fire, March 25, 1998.

"The next step is to determine whether the plaintiff is entitled to the benefit of the ameliorative effects of the discovery rule." *Id.* The discovery rule tolls the statute of limitation until the claimant knows or by the exercise of reasonable diligence should know of his claim. Whether the discovery rule applies is determined, in tort actions, by the application of Syllabus Point 4 of *Gaither v. City Hospital, Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997).[4] We stated that "this rule tolls the statute of limitations until a plaintiff, acting as a reasonable, diligent person, discovers the essential elements of a possible cause of action, that is, discovers duty, breach, causation and injury." *Id.,* 199 W.Va. at 714, 487 S.E.2d at 909. If the plaintiff is not entitled to the ameliorative effects of the discovery rule, then "[t]he last step in the statute of limitations analysis is to determine if the limitation period is tolled by some misconduct of the defendant." *Keesecker,* 200 W.Va. at 684, 490 S.E.2d at 771.[5]

The appellants assert that they did not know the identity of the tortfeasor—Chemetronics—until October 2001, and therefore could not have brought suit until that identity was discovered through reasonable diligence. However, applying the third and fourth steps of *Keesecker,* it is clear that the Bennetts cannot benefit from the discovery rule in their claims against Chemetronics. The record shows that during discovery in June 2000, the Bennetts were given documents that identified Chemetronics as being involved with the manufacture of the heat sensors. The appellants' experts identified the heat sensors as a potential source of the malfunction of the alarm system. The Bennetts therefore should have reasonably known in June 2000—and not in October 2001—through due diligence that Chemetronics was the manufacturer of the heat sensors, and that the heat sensors may have malfunctioned and allowed the fire to destroy their home. Moreover, there is nothing in the record to suggest misconduct on the part of Chemetronics to conceal their identity or their misconduct. Therefore, the appellants are not entitled to the protection of the discovery rule. We would affirm the circuit court's order granting summary judgment in favor of Chemetronics.

## IV.

The circuit court's two December 11, 2003 orders as to the Toyota and the Honeywell defendants are reversed. The circuit court's December 11, 2003 order as to Chemetronics is affirmed, and the case is remanded for proceedings consistent with this opinion.

Affirmed in part, Reversed in part, and Remanded.

---

4. Syllabus Point 4 of *Gaither v. City Hospital* states:

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statue of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, show know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

5. This step is espoused by Syllabus Point 3 in *Cart v. Marcum,* 188 W.Va. 241, 423 S.E.2d 644 (1992):

> Mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of the statute of limitations; the "discovery rule" applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury.